(574 P.2d 572)

No. 49,054

STATE OF KANSAS, *Appellee,* v. JOHNNIE LEE DEAN, *Appellant.*

Opinion filed February 10, 1978.

*Richard L. Hilton,* of Wichita, for the appellant.

*Stuart W. Gribble,* Assistant District Attorney, *Curt T. Schneider,* Attorney General, and *Vern Miller,* District Attorney, for the appellee.

Before REES, P.J., SPENCER and PARKS, JJ.

PARKS, J.: Defendant, Johnnie Lee Dean, was convicted by a jury of possession of a firearm after a felony conviction (K.S.A. 21-4204) and possession of marijuana (K.S.A. 1976 Supp. 65-4101, K.S.A. 65-4105 and K.S.A. 1976 Supp. 65-4127b).

On November 3, 1976, radar officer Gerald Allen attempted to stop defendant for a speeding violation but was unable to apprehend him. Patrolman Roland Meyers, responding to the broadcast alert of the fleeing car, proceeded to the vicinity, saw defendant, and began pursuit. During the chase the defendant lost control of his car, which jumped a curb, returned to the street and crashed into the back of a parked pickup truck. When Patrolman Meyers approached the automobile, he saw the defendant lean across the seat and open the door on the passenger side. It appeared that the defendant was either putting something under the seat or under the car.

Patrolman Meyers ordered the defendant out of his car, checked him for weapons, handcuffed and detained him until

radar officer Allen arrived on the scene and took custody of the defendant. Meyers then returned to the defendant's car where he observed an orange overnight case directly under the opened door. He reached under the car, picked up the locked case, placed it on the passenger seat and opened it with one of the keys he had found on the floor of the car. Inside the case were four bags of what appeared to be marijuana.

Meyers informed radar officer Allen of his find, left the unlocked case on the seat of defendant's car and then departed to complete another call which had been interrupted by the chase.

When Patrolman Meyers returned 30 minutes later, three police officers and the handcuffed defendant were still at the scene completing an accident report. Meyers then continued his search of the overnight case, and at that time found a .25 caliber automatic pistol. These searches of the overnight case were made without the defendant's consent or a search warrant.

Defendant's timely filed pretrial motion to suppress the evidence obtained from the overnight case was heard and overruled. A similar motion was also raised and overruled during the trial. Defendant was convicted of both crimes, and appeals on the ground that his Fourth Amendment rights were violated. We agree.

The issue is whether consent or a search warrant is required before a law enforcement officer may open a locked overnight case which is properly in his possession and which he has probable cause to believe contains contraband.

The U. S. Supreme Court recently addressed this question in *United States v. Chadwick*, 433 U.S. 1, 53 L.Ed.2d 538, 97 S.Ct. 2476 (1977). There it was held that respondents were entitled to the protection of the Warrant Clause of the Fourth Amendment, with the evaluation of a neutral magistrate, before their privacy interests in the contents of a footlocker were invaded.

The footlocker in *Chadwick* was taken off a train in Boston and placed in the trunk of a car. The defendants were arrested while the car trunk was still open and before the car engine had been started. A search disclosed no weapons, but the keys to the footlocker were taken from one of the defendants. The footlocker remained under the exclusive control of law enforcement officers at all times. At the federal building an hour and a half after the

arrests, the agents opened the footlocker and luggage. They did not obtain the defendants' consent nor did they secure a search warrant. Before trial, defendants moved to suppress the marijuana obtained from the footlocker. In the district court, the government sought to justify its failure to secure a search warrant under the "automobile exception" rule and as a search incident to the arrests. The district court rejected both justifications, holding that warrantless searches are *per se* unreasonable, subject to a few carefully delineated and limited exceptions.

Mr. Chief Justice Burger, speaking for the court, said:

"By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause. There being no exigency, it was unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides." [p. 11.]

. . . . . . . . . . . . . . . .

"Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile.

"Nor does the footlocker's mobility justify dispensing with the added protections of the Warrant Clause. Once the federal agents had seized it at the railroad station and had safely transferred it to the Boston federal building under their exclusive control, there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained. The initial seizure and detention of the footlocker, the validity of which respondents do not contest, were sufficient to guard against any risk that evidence might be lost. With the footlocker safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant." [p. 13.]

In the instant case, the state, like the government in *Chadwick,* urges that the search was pursuant to a lawful arrest. This argument fails because once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer incident to the arrest. See *Chadwick,* supra.

Patrolman Meyers searched the overnight case after the defendant had been placed in the custody of radar officer Allen;

hence the warrantless search cannot be viewed as incident to the arrest. Further, the fact that Meyers interrupted the search for 30 minutes while he completed another call negates any theory of exigency.

From the record before us, we hold that the defendant's Fourth Amendment rights were violated and the admission of such evidence denied him a fair and impartial trial.

The conclusion we have reached makes it unnecessary for us to consider the other alleged error.

For the reasons set forth, the judgment is reversed and this case is remanded with directions to grant the defendant a new trial.