Argued and submitted March 3, reargued September 8, affirmed November 2, petition for rehearing denied December 7, 1982

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## LOIS MARIE CARAHER,
*Petitioner on Review.*

### (CA A20330, SC 28360)

653 P2d 942

Linda K. Eyerman, Metropolitan Public Defender, Portland, argued the cause and filed the brief for petitioner on review.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

ROBERTS, J.

Campbell, J., concurs in the result only and filed an opinion in which Tanzer, J. joins.

Lent, C. J., dissented and filed an opinion.

## ROBERTS, J.

The issue in this case is whether a search of defendant's purse, including the opening of the coin compartment of a wallet within that purse, conducted without a warrant, after defendant was arrested and placed in a police car and the purse had been taken from her, is a search incident to arrest and therefore an exception to the warrant requirement of the fourth amendment to the U.S. Constitution and article 1, section 9 of the Oregon Constitution.[1]

Defendant has no prior criminal record and, until the events discussed here, had never been arrested. She came to police attention following a report of a street altercation in Portland. Police arriving at the scene found defendant lying on the hood of a parked car in a semiconscious state. An ambulance was called, and after defendant was revived, police questioned her.[2] Asked about her activity in the area, defendant told the officer she was selling "bunk."[3] At this point police determined that there was an arrest warrant out for defendant's companion; when police attempted to handcuff him, he "became upset," according to police, and said defendant had cocaine on her person. The police then placed defendant's companion in a police car for transport to jail and placed defendant in another police car for transport to a detoxification center. On the basis of defendant's statement that she was selling

---

[1] Article I, section 9 of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.—"

Amendment IV of the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] The officer doing the questioning testified defendant still appeared groggy and unsteady on her feet, and that he didn't feel it would be prudent to leave her on her own, though the ambulance attendants had advised him it did not appear to be an emergency.

[3] Fake narcotics.

bunk and her companion's statement that defendant possessed cocaine, police had a female officer search defendant's person before handcuffing her and taking her into what one officer termed "protective custody" and another termed a "civil hold."[4] In a pocket of the jacket defendant was wearing the officer found paper "bindles" containing a white powder. The officer, suspecting the substance to be cocaine, placed defendant under arrest for possession of a controlled substance. A search of defendant's person uncovered no further contraband or weapons. Her purse was taken from her. She was handcuffed and placed in the back seat of a police car which had a barrier between the front and back seats. On the way to the booking facility, the police officer who had made the arrest and who held defendant's purse in the front seat of the police car opened the purse, found a wallet within, opened the coin compartment of the wallet and found a white piece of paper, inside of which was a white cross-top pill and chunks of a similar pill. Subsequent lab analysis revealed the pills were amphetamines.

The state concedes the search of the wallet was not conducted for identification purposes. *See State v. Florance,* 270 Or 169, 189, 527 P2d 1202 (1974). The state made no attempt at trial to justify the search as a "booking" or "inventory" search, and put on no evidence of the normal practices which are part of the booking procedure at the jail to which defendant was taken. The trial court nevertheless upheld the search as an inventory search.[5] The Court of

---

[4] As noted in *State v. Newman, supra,* a "civil hold," complete with handcuffs, is a procedure undefined in Oregon statutes or case law. Defendant does not challenge the search of her person incident to the "civil hold" or the lawfulness of the arrest which followed.

[5] This was the characterization of the trial court's holding made by defense counsel at oral argument before us. At trial the court and defense counsel had the following exchange, which supports the characterization:

"THE COURT: * * * I think this was a good search. I think they had a right to inventory that purse.

"Whether it was done in the police car or done in the jail doesn't make a whit of difference.

"It's not like opening containers. They are looking in her wallet. I think they have an obligation to inventory her possessions for her protection and their own, and a pill is not something that's so hard to identify. As I understand, they are cross tops, and they're very apparent and obvious when you see one.

Appeals upheld the search on the basis of *State v. Brown,* 291 Or 642, 634 P2d 212 (1981).[6] Before this court, the state argued only that the search was one incident to arrest. That is the single issue here.

Defendant has challenged the search of her purse, and the wallet within the purse, as violating both state and federal constitutional prohibitions against unreasonable searches or seizures. Defendant argues that the purse was an "effect" for constitutional purposes, *i.e.,* a "possession within an arrestee's immediate control," and that *United*

---

"I think it's a good search, and I will deny your motion.

"COUNSEL: All right. May I just say for the record that I raised other grounds in my motion to suppress, and although I didn't argue them, I don't want to lose them by default.

"THE COURT: Of course, it was seized without a warrant, but I think that first of all they had probable cause to search this lady considering her physical condition and the statements of her companion. I think they had probable cause to search her, and so they, therefore, when they found powder, they had probable cause to arrest her.

"As it turned out, it was not a controlled substance, but it gave the appearance of that, and I also heard the statement that she was selling bunk or whatever her expression. The arrest is appropriate. In my view they had an obligation to take her property into custody, and I think they had a right to make an inventory search, and in the course of that they found contraband which was the basis of this charge.

"So I think it was appropriate to act without a warrant. I think they had probable cause to arrest her. I think I agree the search was without her consent, but I don't think consent was a necessary thing at this point in time. I don't think it was overintrusive.

"I think there was probable cause for the arrest, as I've indicated, and I think that it was — it was not beyond the scope incident to a lawful arrest. So for any of the reasons I've raised, I think the search was okay.

"COUNSEL: So you're saying that searching the wallet would have been appropriate either incident to the lawful arrest or as an inventory search?

"THE COURT: I am holding that they had a right to make an inventory search of her wallet, her bag and wallet, and when they did that, they found the drug. They had a right to arrest her. They had probable cause for that, and then everything else followed.

"COUNSEL: All right."

[6] Defense counsel characterized the Court of Appeals opinion as approving the search incident to defendant's arrest. *State v. Brown, supra,* involved a search during the booking process which was justified "as an incident to a lawful arrest." 291 Or at 655. *Brown* cited as authority *State v. Florance, supra,*

"* * * such a search of the person arrested as would be reasonable if made by the officer at that time and place may be made by him at any time in the course of transporting the arrested person to jail." 270 Or at 191-92.

*States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 LEd 2d 538 (1977); *State v. Groda,* 285 Or 321, 591 P2d 1354 (1979); *State v. Downes,* 285 Or 369, 591 P2d 1352 (1979); and *State v. Keller,* 265 Or 622, 510 P2d 568 (1973) are the applicable law invalidating the search.

In *State v. Keller, supra,* this court addressed for the first time the subject of an "inventory search" of an automobile. The defendant in *Keller* was stopped while driving her automobile on suspicion of driving while suspended and was subsequently arrested for that offense. Defendant and her passenger, who was intoxicated, were placed in the police vehicle. Police then proceeded to inventory the contents of the car before towing it pursuant to administrative requirements to note, among other things, valuables and weapons present in the car. 265 Or at 624. During the inventory police found a fishing tackle box on the floor of the back seat. The box was tied closed with a wire. Removing the wire and opening the box, the police found narcotics. We held that because the contents of the tackle box were not in plain view they could not be seized as part of an inventory search incident to a lawful arrest. We said

> "The officers testified they were not searching for evidence, but were only inventorying the automobile's contents. With no exigent circumstances present they could have easily inventoried 'one fishing tackle box,' along with other items in plain view. If they had probable cause to believe a crime was being committed * * * they could have sought a search warrant from a disinterested magistrate." 265 Or at 625-26.

*Keller* was decided before the U.S. Supreme Court had ruled directly on an inventory search of an automobile without a search warrant where the evidence is not in plain view. 265 Or at 625. Relying on cases from other states we held the search of the closed box was unreasonable under both the U.S. and Oregon Constitutions.

We subsequently cited *Keller* and the U.S. Supreme Court case of *United States v. Chadwick, supra,* in ordering suppression of drugs found in a bag inside a flight bag contained in a closed trunk in a vehicle which had been taken into police custody. *State v. Downes, supra,* 285 Or at 371-72. We held that the search could not be justified as an

inventory search, *per Keller*, nor under the "automobile exception" to the fourth amendment warrant requirement formulated in *Chambers v. Maroney*, 399 US 42, 90 S Ct 1975, 26 LEd 2d 419 (1970) and *Carroll v. United States*, 267 US 132, 45 S Ct 280, 69 LEd 543 (1925).

The state argues that a purse is an item "immediately associated with the person of an arrestee" and may be validly searched at the time of arrest or booking under the rule announced in *State v. Florance, supra*, which adopted the federal standard enunciated by the U.S. Supreme Court in *United States v. Robinson*, 414 US 218, 94 S Ct 467, 38 LEd 2d 427 (1973).

The state urged at oral argument that the recent case of *New York v. Belton*, 50 NY2d 447, 429 NYS2d 574, 407 NE2d 420 (1980) *rev'd* 453 US 454, 101 S Ct 2860, 69 LEd 2d 768 (1981) *aff'd on other grounds* 55 NY2d 49, 447 NYS2d 873, 432 NE2d 745 (1982), is the new federal fourth amendment standard for searches incident to arrest, and justifies the opening of the purse in this case. Counsel for the state insisted the facts of this case "may or may not be *Robinson*, definitely are *Belton*, and are not *Chadwick*." In *Belton*, the U.S. Supreme Court held that once police have made a lawful custodial arrest of an occupant of an automobile they may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile, and open any containers found within the compartment. While the court apparently took pains not to decide the case under the "automobile exception" analysis formulated in *Chambers v. Maroney, supra*, and *Carroll v. United States, supra, see Belton, supra*, 453 US at 462 n. 6, and Rehnquist, J. concurring, 453 US at 463, the opinion limits the holding to the permissible scope of a search incident to arrest when the person being arrested is the occupant of an automobile:

> "* * *[N]o straightforward rule has emerged from the litigated cases respecting the question involved here — the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." 453 US at 459.

> "* * *[C]ourts have found no workable definition of 'the area within the immediate control of the arrestee' when

that area arguably includes the interior of an automobile and the arrestee is its recent occupant." 453 US at 460.

"Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic content. *[sic]* It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." 453 US at 460 n. 3.

Contrary to the state's position, in our reading all that *Belton* does is apply the "area of immediate control" test first enunciated in *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 LEd 2d 685 (1969) to an arrest of an occupant of an automobile. In the case before us, defendant was not present in an automobile but was a pedestrian. The placement of defendant and her effects within a police car presumably does not suddenly bring everything within an "auto exception." We do not believe that *Belton* allows police to open all containers within the immediate control of any arrestee, but only those within the passenger compartment of a car. *See United States v. Monclavo-Cruz,* 662 F 2d 1285 1287-88 (9th Cir 1981) similarly limiting *Belton. But see United States v. Brown,* 671 F2d 585 (DC Cir 1982), applying *Belton* to street arrest and *United States v. Fleming,* 677 F2d 602 (7th Cir 1982) applying *Belton* to street search following arrest in a private home.

In *Florance,* we declined to interpret article I, section 9 of the Oregon Constitution differently than the United States Supreme Court had interpreted the federal fourth amendment. In subsequent cases the court has reaffirmed that it has independent responsibility to interpret article I, section 9, and has made the decision to follow fourth amendment precedents on a case by case basis. *See State v. Holt,* 291 Or 343, 345 n. 1, 630 P2d 854 (1981); *State v. Kennedy,* 290 Or 493, 497, 624 P2d 99 (1981); *State v. Bishop,* 288 Or 349, 353-54, 605 P2d 642 (1980); *State v. Nettles,* 287 Or 131, 135 n. 2, 597 P2d 1243 (1979); *State v. Heintz,* 286 Or 239, 251 n. 4, 594 P2d 385 (1979); *State v. Greene,* 285 Or 337, 339, 591 P2d 1362 (1979).[7]

---

[7] We have often announced a holding without basing it on one constitutional provision or the other, after referring to both, *State v. Newton,* 291 Or 788, 801, 636 P2d 393 (1981); *Roberts v. Mills,* 290 Or 441, 444, 622 P2d 1094 (1981); *State*

*State v. Florance,* however, does not make article I, section 9 of the Oregon Constitution the same as the federal fourth amendment for all times and purposes. It could not very well do so. When this court gives Oregon law an interpretation corresponding to a federal opinion, our decision remains the Oregon law even when federal doctrine later changes.

We said in *State v. Florance, supra* and *State v. Flores,* 280 Or 273, 570 P2d 965 (1977) that uniformity between state and federal law is an important consideration in deciding whether to adopt a rule imposing the same analysis on article 1, section 9 of the Oregon Constitution as that used for the fourth amendment to the United States Constitution. In *Florance,* we noted that the law of search and seizure was, in 1974, "badly in need of simplification," and concluded that adopting a different rule for searches under the Oregon Constitution would only confuse things further. 270 Or at 183. This need for uniformity was again a factor in *Flores, see* 280 Or at 281-82. *See also State v. Hirsch,* 267 Or 613, 627, 518 P2d 649 (1974) (Denecke, J., dissenting). Eight years of uniformity with U.S. Supreme Court decisions has not, however, brought simplification to the law of search and seizure in this state. This point is illustrated by the concurring opinion in this case. The concurrence applies *Robinson* because it resolves that a purse is more closely akin to property immediately associated with the person than not. This court could just as readily decide this case under *Chadwick* and *State v. Newman,* 292 Or 216, 637 P2d 143 (1981) *cert denied* 457 US 1111, 102 S Ct 2915, 73 LEd 2d 1321 (1982)[8]

---

*v. Quinn,* 290 Or 383, 390, 623 P2d 630 (1981); *State v. Carlile,* 290 Or 161, 163, 619 P2d 1280 (1980); *State v. Matsen/Wilson,* 287 Or 581, 601 P2d 784 (1979). Sometimes a case is decided only on fourth amendment grounds, or on the basis of fourth amendment analysis. *State v. Brown, supra, see* Linde, J., concurring, 291 Or at 656; *State v. Tourtillott, supra,* 289 Or at 853-54; *State v. Jordan,* 288 Or 391, 402, 605 P2d 646 (1980) *cert denied* 449 US 846, 101 S Ct 132, 66 LEd 2d 56 (1980); *State v. Fondren,* 285 Or 361, 367, 591 P2d 1374 *cert denied* 444 US 834, 100 S Ct 66, 62 LEd 2d 44 (1979).

[8] *Newman* decided that a search of a purse removed from its owner's possession is not a search of the person. Though involving a noncriminal situation, the opinion indicates that "even in the context of a criminal case it would have been questionable whether the police could have searched the defendant's purse without a warrant." 292 Or at 223 n 8.

by finding that purses are not mere "substitute pockets" but are rather possessions separate from the person which may or may not be within the arrestee's immediate control. Either determination is defensible but neither serves to lessen the confusion surrounding search and seizure law. The resolution of this case under the federal analysis provides no guidance for the next. How will we later characterize diaper bags, backpacks, briefcases, gym bags, shopping bags, lunch buckets and all the other types of portable repositories in which people carry their possessions? Neither this court nor law enforcement personnel could divine that answer. The goal of simplification is, in our view, better served by relying on article I, section 9 of our own Constitution to formulate an independent rule consistent with our past decisions than by hypothesizing how the U.S. Supreme Court would consider this case in light of its past decisions[9] and then deciding whether to adopt that rule.

■     There have been recurring reminders from members of this court that we remain free, even after *Florance*, to interpret our own constitutional provision regarding search and seizure and to impose higher standards on searches and seizures under our own constitution than are required by the federal constitution. This is part of a state court's duty of independent constitutional analysis. *State v. Brown, supra,* 291 Or at 659-61 (Linde, J. concurring); *State v. Tourtillott,* 289 Or 845, 853-854, 618 P2d 423 (1980) *cert denied* 451 US 972, 101 S Ct 2051, 68 LEd 2d 352 (1981); *State v. Greene, supra,* 285 Or at 345-60 (Linde, J. specially concurring); *State v. Groda, supra,* 285 Or at 335 (Lent, J. specially concurring); *State v. Flores, supra,* 270 Or at 282-89 (Linde, J. dissenting). *See Cooper v. California,* 386 US 58, 87 S Ct 788, 17 LEd 2d 730 (1967). That a state is free as a matter of its own law to impose greater restrictions on police activity than those that the United States Supreme Court holds to be necessary upon federal constitutional standards is beyond question. *Pruneyard*

---

[9] Specifically *Robinson, Chadwick and Belton, all supra,* and most recently *United States v. Ross,* ___ US ___, 102 S Ct 2157, 72 LEd 2d 572 (1982). *United States v. Ross,* relies upon an "automobile exception" analysis to justify the search and seizure of containers within an automobile trunk following the arrest of the driver.

*Shopping Center v. Robins,* 447 US 74, 81, 100 S Ct 2035, 64 LEd 2d 741 (1980); *Oregon v. Hass,* 420 US 714, 719, 95 S Ct 1215, 43 LEd 2d 570 (1975); *State v. Evans,* 258 Or 437, 442, 483 P2d 1300 (1971); *State v. Flores, supra.* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv L Rev 489 (1977). Indeed, the states are "independently responsible for safeguarding the rights of their citizens." *People v. Brisendine,* 13 Cal 3d 528, 551, 119 Cal Rptr 315, 531 P2d 1099 (1975). Contrary to the concurring opinion, 293 Or at 761, 653 P2d 942 (1982), an increasing number of state courts are relying on an analysis of the search and seizure provisions of their own constitutions to expand constitutional protection beyond those mandated by the fourth amendment, often directly avoiding applicable United States Supreme Court precedent. *See e.g., State v. Hunt,* 91 NJ 338, 450 A2d 952, (1982); *State v. Daniel,* 589 P2d 408 (Alaska 1979); *State v. Glass,* 583 P2d 872 (Alaska 1978); *Zehrung v. State,* 569 P2d 189 (1977) *modified* 573 P2d 858 (Alaska 1978) (rejecting *United States v. Robinson* ); *People v. Brisendine, supra; Burrows v. Superior Court of San Bernardino County,* 118 Cal Rptr 166, 13 Cal 3d 238, 529 P2d 590 (1974); *People v. Clyne,* 189 Colo 412, 541 P2d 71 (1975) (rejecting *Robinson* ); *Nealy v. State,* 400 So2d 95 (Fla. Dist. Ct. App. 1981); *People v. Kaluna,* 55 H 361, 520 P2d 51 (1974) (rejecting *Robinson* ); *Wagner v. Commonwealth,* 581 SW2d 352 (Ky 1979); *People v. Beavers,* 393 Mich 554, 227 NW2d 511 *cert denied* 423 US 878, 96 S Ct 152, 46 LEd 2d 111 (1975); *O'Connor v. Johnson,* 287 NW2d 400 (Minn 1979) (rejecting *Zurcher v. Stanford Daily,* 436 US 547, 98 S Ct 1970, 56 LEd 2d 525 (1978)); *State v. Brackman,* 178 Mont 105, 582 P2d 1216 (1978); *State v. Osborne,* 119 NH 427, 402 A2d 493 (1979); *State v. Johnson,* 68 NJ 349, 346 A2d 66 (1975); *State v. Benoit,* 417 A2d 895 (RI 1980); *State v. Opperman,* 247 NW2d 673, (SD 1976) *rev'd* 428 US 364, 96 S Ct 3092, 49 LEd 2d 1000 (1976); *Merchants Bank v. State, Wildlife Resources,* 567 SW2d 476 (Tenn Ct App 1978); *Gill v. State,* 625 SW2d 307 (Tex Cr App 1981). Not only have state courts made independent decisions in the first instance; sometimes they have declined to follow the United States Supreme Court's analysis on remand after that court reversed the state court's fourth amendment analysis. This happened on remand in *Belton, supra,* and in *South Dakota*

*v. Opperman, supra.* Other state opinions, like our own post *Florance* opinions, have noted that such an expansion is permissible, while declining in a given case to take such a step. *State v. Texeira,* 50 H 138, 433 P2d 593 (1967); *Commonwealth v. Ortiz,* 376 Mass 349, 380 NE2d 669 (1978); *Commonwealth v. Mimms,* 471 Pa 546, 370 A2d 1157 *rev'd* 434 US 106, 98 S Ct 330, 54 LEd 2d 331 (1977) *rev'd on other grounds* 477 Pa 553, 559-62, 385 A2d 334, 336-38 (1978) (Roberts, J. concurring); *Thompson v. State,* 83 Wis2d 134, 149, 265 NW2d 467, 474 (1978) (Abrahamson, J. concurring).[10]

This court's reliance upon our own constitutional provision began many years ago. As early as 1901 we began to build our own state body of law governing searches and seizures, *State v. McDaniel,* 39 Or 161, 65 P 520 (1901). Thirty-six years before the federal fourth amendment was made applicable to the states in *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 LEd 2d 1081 (1961), we adopted our own exclusionary rule in *State v. McDaniel,* 115 Or 187, 231 P 965, 237 P 373 *rev'd on rehearing,* 115 Or 234, 237 P 373 (1925). Oregon decisions before *Florance,* as early as *State v. Laundy,* 103 Or 443, 204 P 958, 206 P 290 (1922), established that under Oregon law a reasonable search of the person is permissible incident to a valid arrest, a rule not adopted by the United States Supreme Court until *Agnello v. United States,* 269 US 20, 30, 46 S Ct 4, 70 LEd 145 (1925). In establishing the Oregon search-incident-to-arrest rule, this court relied upon opinions from courts in other states. *See* 103 Or at 496-97. Similarly, in the present case we have reviewed decisions from other states and find them pertinent here.

In *Zehrung v. Alaska, supra,* defendant was stopped by a state trooper while driving his employer's truck which was emitting excessive smoke. While investigating, the trooper discovered there were two bench warrants out for

---

[10] For a general discussion of what has been termed "the new federalism" arising from state court's emphasis on their own state constitutions, *see* Linde, *First Things First: Rediscovering the State's Bill of Rights,* 9 U of Baltimore L Rev 379 (1980), and the articles cited at 396 n. 70, therein, particularly Wilkes, *The New Federalism in Criminal Procedure: State Court Evasion of the Burger Court,* 62 Ky. L.J. 421, 437-43 (1974); Wilkes, *More on the New Federalism in Criminal Procedure,* 63 Ky. L.J. 873 (1975); Wilkes, *The New Federalism in Criminal Procedure Revisited,* 64 Ky. L.J. 729 (1976).

defendant, one because he had failed to appear on a misdemeanor and one because he had failed to pay a $25 fine. Defendant was arrested and taken to jail where his personal belongings were inventoried. While an officer was going through defendant's wallet he found a small white paper packet containing two credit cards which he noted did not have defendant's name on them. They were given to the arresting officer. Defendant was then released on bail. The arresting officer learned that the credit cards had been taken during an alleged rape and robbery for which defendant was then arrested. Defendant challenged the search and seizure on the ground that any preincarceration inventory of his effects was improper because he had made bail before he was booked. The court reasoned that the justification for a preincarceration inventory did not exist if the arrestee is not to be incarcerated and held the search to be impermissible under the Alaska Constitution. In rejecting the state's argument that the search was justified as a search incident to arrest the court restated from *McCoy v. State,* 491 P2d 127 (Alaska 1971) the following requirements of a warrantless search incident to arrest.

> "Adequate protection for the arrestee's legitimate interests in privacy, however, will be provided by the following restrictions on warrantless incidental searches of the person: (1) The arrest must be valid—probable cause for the arrest must exist or the search is unconstitutional. (2) The search must be roughly contemporaneous with the arrest * * *. (3) The arrest must not be a pretext for the search; a search incident to a sham arrest is not valid * * *. (4) Finally, the arrest must be for a crime, evidence of which could be concealed on a person." (Footnote omitted.) 569 P2d at 196.

Defendant based his argument on the fourth requirement for a valid incidental search. The state asked the court to abandon the fourth requirement in light of *United States v. Robinson, supra.* The court responded by posing the question as a determination of whether the *Robinson* rule permitting full body searches incident to any custodial arrest, violates the Alaska constitutional provision on search and seizures, Alaska Const art 1 § 14. As the court said,

"Put another way, the issue presented is whether the fourth *McCoy* limitation on searches incident to arrest, *i.e.,* that the arrest must be for a crime, evidence of which could be concealed on a person, is required by the Alaska Constitution. * * *" 569 P2d at 197.

The court concluded it could abandon the fourth requirement or follow the approach used by some other state courts. It did the latter, specifically relying on *State v. Kaluna, supra,* and *People v. Brisendine, supra.* The court held "the Alaska Constitition requires that governmental intrusions into the personal privacy of Alaska citizens be limited in scope to that degree necessary under the particular circumstances." 569 P2d at 199.

In *State v. Kaluna, supra,* the Hawaii Supreme Court invalidated the search of a small tissue packet which defendant took from her brassiere and handed to a matron during a station house strip search after being arrested for attempted robbery. The packet contained Seconal, a barbiturate and defendant was subsequently charged with unlawful possession of the substance; she was never charged with attempted robbery. Even though the court recognized that under *Robinson* the full search incident to custodial arrest was reasonable and, therefore, defendant's federal constitutional rights had not been violated, the search was held nevertheless unreasonable under the Hawaii Constitution.

In refusing to decide *Kaluna* on the basis of *Robinson* the Hawaii court cites two Oregon cases, *State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968) and *State v. Krogness,* 238 Or 135, 144, 388 P2d 120 (1963) *cert denied* 377 US 992, 84 S Ct 1919, 12 LEd 2d 1045 (1964), quoting from *Krogness* for the proposition that before *Robinson* "[a]s a general rule, the search must be reasonably related to the offense which prompts the arrest." The *Kaluna* court concluded that

"In our view, the right to be free of 'unreasonable' searches and seizures under article I, section 5 of the Hawaii Constitution is enforceable by a rule of reason which requires that governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary under the circumstances. * * *" (Footnote omitted.) 520 P2d at 58.

The court further added that its decision should not hamper the police in the legitimate exercise of their authority because

> "each case of search and seizure without a warrant must turn on its own facts, and that each proffered justification for a warrantless search must meet the test of necessity inherent in the concept of reasonableness. Basically, where the nature of the offense makes it reasonable to assume that evidence of that offense may be located on the arrestee's person or in the belongings in his possession at the time of the arrest, then the police may search those areas without a warrant. * * * (Footnote omitted.)

> "In sum, we hold that a search incident to a valid custodial arrest does not give rise to a unique right to search; instead, the circumstances surrounding the arrest generate the authority to search without a warrant. * * *" 520 P2d at 60.

In *People v. Brisendine, supra,* the California Supreme Court invalidated the search of an opaque plastic bottle and envelopes found inside an arrestee's knapsack which contained marijuana and tablets of restricted drugs, holding that the intrusion could not be justified by the limited purpose which validated the search in its inception.

The officers arrested defendant and other campers in a forest for a fire ordinance violation. Because it was an area where camping was prohibited and because the officers had left their citation book in the police vehicle it was necessary for the officers to escort the campers out of the isolated forest area. This entailed traversing a considerable distance over primitive terrain in the nighttime carrying the effects of the arrestees. Under the circumstances the court said it was reasonable for the officers to conduct a search for weapons but the search for weapons did not justify the search of the bottle and envelopes.

The court specifically rejected *Robinson* saying,

> "* * * we cannot accept the *Robinson* implication that 'an individual lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person.' (414 US at p. 237, 94 S Ct at p. 494.)" 13 Cal 3d at 547, 119 Cal Rptr at 327, 531 P2d at 1111.

The court then adopted the view of the Hawaii court in *Kaluna, supra,* holding that "governmental intrusions into

the personal privacy of citizens of this State [must] be no greater in intensity than absolutely necessary under the circumstances." 13 Cal 3d at 552, 119 Cal Rptr at 330, 531 P2d at 1114, quoting from *State v. Kaluna*, 520 P2d at 58-59.[11]

■    In basing its decision on article I, section 13 of the California Constitution, the court pointed out that the United States Supreme Court has recognized that state constitutions provide an independent and adequate ground for decisions thus making the state courts the ultimate arbiters of state law,[12] and that although their decisions in the search and seizure area have often corresponded to federal law, there had "never been any question that the similarity was a matter of choice and not compulsion." 119 Cal Rptr at 328. This court chose in *Florance* to follow the federal law of *Robinson,* and .thus adopted the federal constitutional minimum standard for the protection of privacy in cases of searches incident to arrests. We do not now choose to continue to do so. We are reluctant to embark upon the task of cataloguing items of personal property in the manner required by adherence to federal cases. We find that the focus on the character of the property searched has led to results which seem too frequently to turn upon fortuitous circumstances surrounding how one chooses to transport personal belongings and has resulted in failure of a more straightforward assessment of those individual protections against government intrusion which constitutions, both state and federal, seek to preserve. It is our belief that the citizens of Oregon are entitled to an analysis of the protections afforded by the Oregon Constitution independent of the United States Constitution.[13] One of the

---

[11] The court also cited an earlier case of its own, *People v. Superior Court of Los Angeles County,* 7 Cal 3d 186, 101 Cal Rptr 837, 496 P2d 1205 (1972) in which it had held that if an arrestee is cited for an offense which typically entails neither instrumentalities nor fruits of the crime, no search is allowable unless there are particular facts present which would lead the officer to believe the arrestee is armed. A pat-down, or limited search for weapons, is permissible, however, if the arrestee is taken into custody.

[12] *Jankovich v. Indiana Toll Road Commission,* 379 US 487, 491-502, 85 S Ct 493, 13 LEd 2d 439 (1965).

[13] This is not a revoluntionary idea but one that is founded in the most fundamental principles of federalism and in the history of state constitutions.

protections derived from the Oregon Constitution includes a recognition that a valid custodial arrest does not alone give rise to a unique right to search. Such a warrantless search must be justified by the circumstances surrounding the arrest.

In deciding this case under the Oregon Constitution we look to Oregon cases decided before *Robinson* and *Florance* which established parameters of permissible searches incident to arrests. In *State v. O'Neal, supra,* defendant was stopped because the car he was driving had no rear license plate. After arresting defendant for that violation and after giving him citations for operating a vehicle without an operator's license and for operating a vehicle with an expired front license plate, defendant's wallet was searched and a half-smoked marijuana cigarette was found. He was then charged with illegal possession of narcotics.

The opinion quotes a minority opinion of Justice Frankfurter in *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 LEd 653 (1950):

" "* * * In plain English, the right to search incident to arrest is merely one of those very narrow exceptions to the 'guaranties and immunities which we had inherited from

---

"* * * It is a fiction too long accepted that provisions in state constitutions textually identical to the Bill of Rights were intended to mirror their federal counterpart. The lesson of history is otherwise: the Bill of Rights was based upon the corresponding provisions of the first state constitutions, rather than the reverse. 'By the end of the Revolutionary period, the concept of a Bill of Rights had been fully developed in the American system. Eleven of the 13 states (and Vermont as well) had enacted Constitutions to fill in the political gap caused by the overthrow of British authority. * * * Eight of the Revolutionary Constitutions were prefaced by Bills of Rights, while four contained guarantees of many of the most important individual rights in the body of their texts. Included in these Revolutionary constitutional provisions were *all of the rights that were to be protected in the federal Bill of Rights.* By the time of the Treaty of Paris (1783) then, the American inventory of individual rights had been virtually completed and included in the different state Constitutions whether in separate Bills of Rights or the organic texts themselves.' * * * (1 Schwartz, The Bill of Rights: A Documentary History (1971) p. 383; see generally 2 *id.,* p. 1204.) In particular, the Rights of the Colonists (Boston, 1772) declared for the first time 'the right against unreasonable searches and seizures that was to ripen into the Fourth Amendment' (1 *id.* at pp. 199, 206), and that protection was embodied in every one of the eight state constitutions adopted prior to 1789 which contained a separate bill of rights (1 *id.,* at pp. 235, 265, 278, 282, 287, 323, 342, 377). (Footnote omitted.) *Brisendine, supra,* 13 Cal 3d at 550, 119 Cal Rptr at 329, 531 P2d at 1113.

our English ancestors, and which had from time imme-
morial been subject to certain well-recognized exceptions
arising from the necessities of the case.' * * *

" '* * * Its basic roots, however, lie in necessity. What is
the necessity? Why is search of the arrested person permit-
ted? For two reasons: first, in order to protect the arresting
officer and to deprive the prisoner of potential means of
escape, * * * and, secondly, to avoid destruction of evidence
by the arrested person. * * *' 399 US at 71-72." 251 Or at
165.

This court then cited *State v. Chinn,* 231 Or 259, 373 P2d
392 (1962) where a search was upheld to protect the
officer[14] and *State v. Krogness, supra,* in which a search was
justified to prevent destruction of evidence. Relying on
these cases the court concluded that the search of defen-
dant's wallet could not reasonably relate to the traffic
offenses for which defendant was arrested or cited and held
that "there must be probable cause to believe that some
crime, other than the traffic offense, has been committed,
and the search must be relevant to that other crime."

The *Chinn* court discussed the reasonableness of
the search incident to arrest as to time, space and intensity
and concluded that "[t]he proper test of a reasonable search
is * * * based upon the entire factual situation." 231 Or at
273. The court then asked: "Was the search close both in
time and space to the arrest? Furthermore, was the inten-
sity of the search commensurate both with the crime and
what was known of the criminal? Finally, there is the
question of the causal relationship between the arrest and
the search." *Id.*

*Krogness* approved the search of the car trunk of a
person who had been arrested for a minor traffic violation
on the basis of a finding by the trial court that the officer
had probable cause to believe that a game violation had
been committed. The court said, "[a]s a general rule, the
search must be reasonably related to the offense which
prompts the arrest" 238 Or at 144, and concluded that the
trunk and other compartments of the automobile could not

---

[14] The *Chinn* decision is based on article 1, section 9 of the Oregon Constitu-
tion but discussed federal cases decided under the fourth amendment because they
were "instructive." 231 Or at 266.

have been searched on the basis of the traffic violation alone but the gun with a telescopic sight which was in plain view in the back seat was sufficient to give the officer, a former game warden, probable cause to believe there had been a game violation and thus the search was justified.[15]

These cases, *Chinn, Krogness* and *O'Neal,* have expanded the justification for a search incident to arrest beyond considerations of the officer's safety and destruction of evidence. They permit a search when it is relevant to the crime for which defendant is being arrested and so long as it is reasonable in light of all the facts. *See also State v. Elk,* 249 Or 614, 620-21, 439 P2d 1011 (1968); *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969). Thus before *Florance* the rule permitting searches and seizures incident to arrest where the search was related to the crime was well established in Oregon. That rule is applicable to the present case.

There were, in fact, two separate searches here. One, not challenged, took place when the female officer searched defendant's person and found paper "bindles" containing a white powder in a pocket of her jacket; the second, the search of the purse, occurred after defendant was handcuffed and was in the police car being transported to the police station. The search was not for the protection of the police nor for the purpose of preventing the destruction of evidence since defendant did not have access to the purse. The question is whether it was relevant to the crime for which the defendant was arrested and whether it was reasonable under the facts of this case.

Because the arrest was for possession of a controlled substance it was reasonable to believe that defendant would carry contraband in her purse and, although, the officers already possessed some evidence they were not prevented from searching further. Accordingly, we hold that the nature of the crime, *i.e.,* possession, and the circumstances involved here, defendant's admission that she was selling "bunk" and her companion's statement that she was carrying cocaine, justify the search as an incident to

---

[15] *United States ex rel Krogness v. Gladden,* 242 F Supp 499 (DC Or 1965) granted Krogness's petition for habeas corpus and held that the search was illegal.

arrest. We find in addition that because the search was close in time and space to the arrest it meets the standard of reasonableness enunciated in *Chinn, supra.*

Affirmed.

**CAMPBELL, J.,** concurring in result.

I concur only in the result reached by the majority. The majority opinion in this case will be remembered as the case in which we shot down *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 LEd 2d 427 (1973) and departed on a lonely journey in the dark of the moon and against the wind into the quagmire of the law of "search and seizure" with only "reasonableness" as a compass.

This court adopted the *Robinson* rule in 1974 in the case of *State v. Florance,* 270 Or 169, 527 P2d 1202. The membership of this court has completely turned over since 1973 — none of the present judges sat on the *Florance* case. Maybe the time is near at hand when we should take another look at whether or not we will follow decisions of the Supreme Court of the United States "on questions affecting the Constitution of the United States and the rights of citizens under the provisions of that Constitution, as well as under" the almost identical provisions of the Oregon Constitution. *State v. Florance, supra,* 270 Or at 183.

It would seem that we would be well advised to wait for a case in which that question has been squarely presented, briefed and argued. This is not that case. In the meantime we should follow *United States v. Robinson, supra,* and the United States Supreme Court decisions which follow it for the reasons set out in *State v. Florance, supra,* one of which is:

> "* * * Not adopting the rule of *Robinson* would add further confusion in that there would then be an 'Oregon rule' and a 'federal rule.' Federal and state law officers frequently work together and in many instances do not know whether their efforts will result in a federal or a state prosecution or both. In these instances two different rules would cause confusion." (270 Or 184).

Oregon is not the only state to adopt the *Robinson* rule. 2 LaFave, Search and Seizure § 5.2 (1978) (a treatise on the Fourth Amendment) states at page 264-265:

"*Robinson* and *Gustafson* have had a significant impact. They are very frequently cited by lower courts in upholding full search incident to custodial arrest. Most noteworthy, however, is the fact that some of the state courts which had previously taken a narrower view of the authority to search the person incident to arrest have accepted the *Robinson-Gustafson* position, either on the ground that their earlier interpretation of the requirements of the Fourth Amendment has now been established as erroneous or on the ground that their earlier interpretation of comparable state constitutional provisions should be brought into line with the interpretation the Supreme Court has given to the Fourth Amendment. Only rarely has a state court rejected *Robinson* and *Gustafson* and construed a state constitutional provision more narrowly."[1] (Footnotes omitted.)

This court has also adopted the rule of *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 LEd 2d 538 (1977). *See State v. Groda,* 285 Or 321, 591 P2d 1354 (1979).

In this case under *United States v. Robinson, supra,* the state contends that the search of the purse was a search of the person incident to arrest and that no additional justification was required beyond the probable cause to arrest. On the other hand, the defendant contends under *United States v. Chadwick, supra,* that the purse was a closed container not immediately associated with her person and that the officers had reduced it to their exclusive control. Therefore, because there was no longer any danger that she would obtain access to the purse, the search was not an incident to arrest and a warrant was required. The parties' opposing contentions require re-examination of the *Robinson* and *Chadwick* cases.

In *Robinson* an officer of the District of Columbia arrested the defendant for driving without an operator's permit. When the defendant emerged from the vehicle the officer searched him and found a "crumpled up cigarette

---

[1] It is true that the quoted statement was published in 1978, but the 1982 pocket part to the text does not indicate any change.

The *Gustafson* case referred to is *Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 LEd 2d 456 (1973) decided the same day as *United States v. Robinson, supra.*

package" in the breast pocket of the coat he was wearing. The officer opened the package and found 14 capsules of white powder which proved to be heroin. The United States Supreme Court reinstated the defendant's conviction saying:

> "* * * The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." 414 US at 235, 94 S Ct at 477, 38 LEd 2d at 440-441.

In *Chadwick* the federal agents in Boston, acting on a tip from San Diego, watched Chadwick, a railroad station attendant, and a third man load a 200 pound footlocker into the truck of Chadwick's automobile. While the trunk was still open and before the engine of the car was started the agents arrested Chadwick. The footlocker was moved to the federal building where one and one-half hours later it was opened and large amounts of marijuana were found. Chadwick filed a motion to suppress. The government tried to justify the search as an incident to arrest. The Supreme Court of the United States affirmed the order allowing the motion and said:

> "* * * However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' *Preston v. United States,* 376 US at 365, 11 LEd 2d 777, 84 S Ct 881, or no exigency exists. Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident

of the arrest." (Emphasis added; footnote omitted.) 433 US at 15, 97 S Ct at 2485, 53 L Ed 2d at 550-551.

In *State v. Brown,* 291 Or 642, 643 P2d 212 (1981) we found that *Chadwick* by using the phrase "personal property not immediately associated with the person of the arrestee" had distinguished it from *Robinson.* In other words, that *Chadwick* had exempted from the application of its ruling personal property discovered as a result of the search of a person, such as "wallets, cigarette boxes, and the like." 291 Or at 653.

The above quoted phrase 'wallets, cigarette boxes, and the like used in *State v. Brown* was taken from 2 LaFave, Search and Seizure, *supra* §5.5 at 347 where the full text is:

> "* * * A search is deemed to be 'of a person' if it involves an exploration into an individual's clothing, including a further search within small containers, such as wallets, cigarette boxes and the like, which are found in or about such clothing. '* * *."

*Brown* was an easy case in that the cigarette box which the defendant surrendered to the jailer came from one of his pockets and therfore clearly fell within the classification of a search of the person and was a search incident to arrest under *Robinson* and not a search of a closed container prohibited under *Chadwick.*

This case is more difficult because the purse carried by the defendant does not quickly fit our *Brown-LaFave* definition of "search of a person." A handbag or a purse carried by a person is not necessarily a small container such as a wallet or cigarette box found in the clothing. However, under some circumstances a handbag or purse might qualify under the looser language of the definition and be a "like" which is found about "such clothing."

Thus, we are required to move from *Robinson* to *Chadwick* and determine if the defendant's purse was "luggage or other personal property not immediately associated with the person of the arrestee" and therefore a closed container. We do not have a description of the defendant's purse. We know only that it was carried by the defendant in her hand at the time of arrest and that it contained a

wallet. The defendant is charged with the possession of drugs found within the wallet.

Apparently, one of the first cases to consider the United States Supreme Court's decision in *Chadwick* was *United States v. Berry,* 560 F2d 861 (7th Cir 1977).[2] In the *Berry* case several FBI agents suspected Stephen Berry and Robert Wilson of being bank robbers and followed them to an apartment house in Schiller Park, Illinois. After an hour and 15 minutes Berry and Wilson left the building and walked to two parked cars. Berry entered one car while Wilson opened the trunk of the other and removed an attache case. As Wilson walked toward Berry's car both men were arrested and handcuffed. The attache case was taken from Wilson and placed on the ground. Approximately eight minutes after the arrest the case was opened by an agent and contraband was found. The defendants filed a motion to suppress. The Court of Appeals at page 864 held:

> "Finally, unlike a purse that might be characterized as 'immediately associated with the person of the arrestee' because it is carried with the person at all times, the attache case here was more like luggage in that Wilson was not carrying it when he left the building, but rather removed it from an auto trunk immediately before his arrest. The warrantless search of the attache case in police custody thus cannot be justified as a search of Wilson's person."[3]

---

[2] *Chadwick* was decided June 21, 1977 and *Berry* was decided August 24, 1977.

[3] The reference to the "purse" by the Seventh Circuit Court of Appeals is dicta in that context. 2 LaFave, Search and Seizure § 5.5 at 355 commments on the *Berry* case as follows:

> "Whether or not the *Berry* result will be accepted by other courts, this case identifies the critical issue posed by *Chadwick:* precisely what is it that takes a possessed container outside the *Robinson* search-incident-to arrest rule? One possible answer, given in *Berry,* is that *Robinson* extends only to containers on the person and containers such as a purse which are 'immediately associated' with the person. But *Chadwick* does not articulate this distinction; as the dissenters noted, the 'Court's opinion does not explain why a wallet carried in the arrested person's clothing, but not the footlocker in the present case is subject to "reduced expectations of privacy caused by the arrest.'" At one point, however, the *Chadwick* majority asserted that by 'placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination.' From this, it might be contended that the distinction is not that drawn in *Berry,* but rather between secured and unsecured containers. This approach would produce a different result in *Berry* and in many other situations." (Footnotes omitted.)

In *State v. Sabater*, 3 Kan App 2d 692, 601 P2d 11 *rev den* (1979), the defendant was convicted of possession of cocaine. When the defendant was placed under arrest on a different charge the police officer took her pocketbook. The officer searched the pocketbook and in it he found a wallet which contained a drinking straw. The residue in the straw contained cocaine. The court upheld the search and said:

> "The custodial arrest of defendant was a seizure of her person. The search of her pocketbook and wallet was lawful. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). We do not view defendant's pocketbook to have been a repository of personal property coming within the rule enunciated in *Chadwick* or in such of its progeny as *United States v. Schleis*, 582 F.2d 1166 (8th Cir. 1978). We hold defendant's pocketbook was immediately associated with the person of defendant, the arrestee, and the search of the pocketbook involved no greater reduction in her expectations of privacy than that caused by the arrest itself. * * *." 601 P2d at 13-14.

In *United States v. Moreno*, 569 F2d 1049, (9th Cir) *cert den* 435 US 972 (1978) undercover agents in San Diego "set up" a buy of ten ounces of heroin from Raymond Moreno. At the delivery site Jody Moreno's purse was taken from her and searched. It contained a revolver and marked money from a previous drug transaction. The Ninth Circuit Court of Appeals held that the search of the purse was valid as an incident to her arrest citing *Chimel v. California*, 395 US 752, 89 S Ct 2034, 23 LEd 2d 685 (1969). *Robinson* and *Chadwick* were not cited.

In *Sumlin v. State*, 266 Ark 709,587 SW2d 571, the defendant was convicted of murder, escape and robbery. A knife and the robbery victim's billfold were found in the defendant's purse when she was arrested. The purse was then held and inventoried at the jail. The Arkansas Supreme Court held that "[a] search of an individual's personal effects is incidental to an arrest if it is conducted shortly thereafter at a jail. *U.S. v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d. 771 (1974)." 266 Ark at 719, 587 SW2d at 577.

In *Dawson v. State*, 40 Md App 640, 395 A2d 160 (1978) the defendant Betty Dawson was convicted of manslaughter. When a policeman arrived upon the scene he

seized and searched Dawson's pocketbook and found a small caliber handgun. The defendant moved to suppress citing *United States v. Chadwick.* The Maryland Court of Appeals upheld the search:

> "Returning to the instant case, we think appellant's pocketbook, unlike the footlocker in *Chadwick,* suitcases in *Ester* and *Dudley,* the overnight case in *Dean* and the briefcase in *Shingleton,* was 'immediately associated with the person of the arrestee.' Therefore, under the rationale of *Berry* which we adopt, the search was permissible under *Chadwick* as a search of appellant's person. Such a search, we believe, is analytically akin to a search of items found in an arrestee's clothing or pockets."[4] 395 A2d at 167.

In *Stewart v. State,* 611 SW2d 434 (Tex Crim App 1981) the defendant, Sherry Lea Stewart was arrested for shoplifting a steak and a bottle of bath oil. Her purse was seized and, pursuant to a search, cocaine was found. The Texas court discussed *Robinson* and *Chadwick* at length. It concluded the search was good. The opinion at 438 said:

> "In the instant case, we believe that the search of the purse is better characterized as a search of items immediately associated with the person of the appellant. As a matter of common usage, a purse is an item carried on an individual's person in the sense that a wallet or items found in pockets are and unlike luggage that might be characterized as 'a repository for personal items when one wishes to transport them,' *Arkansas v. Sanders,* [442 US 753, 99 S Ct 2586, 61 LEd 2d 235 (1979)] a purse is carried with a person at all times. Although the arrest of appellant, standing alone, did not destroy whatever privacy interests she had in the contents of the purse, it did, at least for a reasonable time and to a reasonable extent, subordinate those interests to the legitimate governmental interest in discovering weapons and preventing the destruction or secretion of evidence."

In *Hinkel v. Anchorage,* 618 P2d 1069 (Alaska 1980)[5] Officer Thompson witnessed an automobile accident

---

[4] The cases referred to by the Maryland court are: *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 LEd 2d 538 (1977); *United States v. Ester,* 442 F Supp 736 (SDNY 1977); *State v. Dudley,* 561 SW 2d 403 (Mo App) (1978); *State v. Dean,* 574 P2d 572); *United States v. Berry,* 560 F2d 861 (7th Cir) *cert den* 439 US 840 (1977).

[5] *But see United States v. Farrar,* 470 F Supp 128 (SD Miss 1979) wherein the Federal District Court ruled that a 9 inch by 12 inch purse hidden under the

involving the defendant, Ida Marie Hinkel. The vehicle driven by Hinkel smashed into another vehicle after running a red light at a high rate of speed. After Hinkel refused to show Thompson her driver's license or get out of her vehicle he took hold of her and her purse and proceeded to pull her out of the vehicle. In the struggle her purse, which had been next to her on the front seat, was left in her vehicle. Hinkel was escorted by Thompson to the back seat of his patrol car. Another officer took the purse from Hinkel's vehicle and gave it to Thompson. The purse was then opened by Thompson who discovered that it contained a loaded hand gun. Hinkel was charged with carrying a concealed weapon and reckless driving. The Alaska Supreme Court found that the search was good. It discussed the oft quoted language of *Chadwick* — "luggage or other personal property not immediately associated with the person of the arrestee," and in connection with it said at page 1071:

> "This language must mean that containers found in clothing pockets may be searched. In our view it also suggests that containers such as purses which are often worn on the person and generally serve the same function as clothing pockets are also excepted from the strict exigency requirement. It would be possible, of course, to treat containers found in clothes pockets, such as billfolds, differently from items such as purses which are not carried in pockets but serve the same purpose. However, we can think of no reasons to justify such a distinction. We conclude that Hinkel's purse was property immediately associated with her person and, therefore, was properly searched incident to her arrest." (Footnote omitted.)

In *United States v. Venizelos*, 495 F Supp 1277 (SD NY 1980)[6] the defendant, Arietta Venizelos, was arrested pursuant to a warrant while driving a small rental car in White Plains, New York. The warrant had been issued under an indictment charging the defendant with a conspiracy to distribute drugs. When arrested the defendant denied her identity and claimed that she was Leslie Kinney. When

---

passenger's seat was within the scope of the *Chadwick* rule and therefore a warrant was required.

[6] In the *Moreno, Sumlin, Hinkel,* and *Venizelos* cases the defendant was arrested in an automobile and the search in each case probably would now be upheld on an additional ground under *New York v. Belton*, 453 US 454, 101 S Ct 2860, 69 LEd 2d 768 (1981).

she started to reach into her purse or handbag an agent stopped her and took the purse. The agent then opened the purse and took out a wallet which he handed back to the defendant. From the wallet the defendant produced a driver's license in the name Leslie Kinney. The agents took the defendant to the Kinney residence where Mrs. Kinney refused to support the defendant's claim that she was Mrs. Kinney's daughter. At the drug enforcement headquarters a more complete search of the purse disclosed needles, syringes, pills, and marijuana. The Federal District Judge upheld the search. At page 1282 of his opinion he said:

> "In affirming that opinion, *[United States v. Chadwick]* the Supreme Court limited its holding to 'luggage or other personal property not immediately associated with the person of the arrestee.' Thus, the court left intact the long line of cases authorizing searches incident to arrest of personal effects—such as the handbag involved here—found in the immediate possession of the arrestee during the course of a lawful arrest.

> "\* \* \* \*

> "We are convinced that the facts of the instant case are sufficiently distinct from those of *Chadwick* and *Sanders* to render those cases inapposite. Here the handbag was small, readily accessible to the defendant, portable, easily capable of being opened, and within the defendant's grasp. It was not heavy, or difficult to carry or maneuver. It carried items normally closely associated with the person itself—identification, cosmetics, money, a wallet, and other items one would normally carry at all times. Indeed, it is reasonable to suppose that had it not been seized at the time of the arrest, the defendant probably would have brought the handbag with her to the DEA district office for identification and to assist in 'booking,' at which time its contents could have been inspected and inventoried under routine police procedures." (Footnotes omitted.)

The general thread that seems to run through all of the above cases is that a handbag or a purse is similar to and serves the same function as a pocket or pockets in a person's clothing. Both the purse and the pockets are used to carry the same personal items—wallet, identification and cosmetics. Several courts have mentioned that a purse is carried by a person at all times. No court has gone so far as to say that a purse is a "portable pocket."

The bottom line in this case is that the defendant's purse was personal property "immediately associated with the person of the arrestee" and therefore subject to search as an incident to arrest. No additonal justification beyond probable cause to arrest was required. There was sufficient probable cause to arrest the defendant. She told the police that she was selling "bunk" and her male companion told them that she was in the possession of cocaine.[7]

It is of no concern that the police officers did not search the defendant's purse until after she was handcuffed and placed in the back of the patrol car. In *State v. Florance, supra,* 270 Or 191-192:

"We hold, however, that upon the taking into custody of a person following a legal arrest, such a search of the person arrested as would be reasonable if made by the officer at that time and place may be made by him at any time in the course of transporting the arrested person to jail."

In *State v. Brown, supra,* we went one step further and said that the defendant could be searched at the jail as an incident to the arrest.

I would hold that the search was good.[8] I would affirm both the Court of Appeals and the trial court.

---

[7] One of the officers at the motion to suppress testified as follows:

"By bunk I asked her if she meant quantities that are sold on the street supposedly to be narcotics but not actually narcotics, a fraud that is common on the streets downtown, and she said yes, that's what she had been doing."

It is a crime to deliver an imitation controlled substance. ORS 475.991.

[8] There is some interesting language in *United States v. Chadwick,* 532 F2d 773 (1st Cir 1976), the United States Court of Appeals case for the First Circuit which was later affirmed by the Supreme Court in *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 LEd 2d 538 (1977):

"* * * Portable objects in hand such as zipper bags, briefcases and small suitcases fit without too much difficulty in *Chimel's* 'immediate control' standard. Their size, accessibility, and portability all liken them to 'personal effects' found on an arrestee's person, such as clothing or a cigarette package in one's pocket, which may lawfully be searched without a warrant as incident to an arrest. *See United States v. Robinson, supra; United States v. Edwards, supra.* To exclude searches of such items can create "gossamer thin" distinctions which arresting officers could find impracticable, if not impossible, to follow; and, where the justification for a search depends to a great extent on the reasonable judgments which the arresting officers could have made at the time of arrest, *see United States v. Robinson, supra,* those distinctions would appear unwarranted." (Footnote omitted.) 532 F2d at 780.

Tanzer, J., joins in this opinion.

**LENT, C. J.,** dissenting.

The purse was "seized," i.e., it was taken from defendant's possession at the time she was placed in the police car for transportation. Throughout the time the purse, the wallet and the coin compartment within were searched, the purse was physically beyond the defendant's ability to reach it. She was in handcuffs in the back of the police car. A plastic shield separated the back of the car from the front. A police officer in the front searched the purse and the wallet. That police officer was never asked why she searched either container. With all due apology to Charles Dickens, I infer quite simply that this was "The Old Curiosity Search."

I shall assume for the sake of argument that there was probable cause to search the purse, even though cause depends in part upon the unsworn information of defendant's companion and there is somewhat less than a paucity of evidence of his veracity in this record. The state quite rightly does not claim there were any exigent circumstances to justify search of these containers without a warrant.

I do not perceive it to be necessary to cite authority for the proposition that under Article I, section 9, of the Oregon Constitution a warrantless search is considered in law to be unreasonable, thereby offending the constitutional prohibition against unreasonable searches, unless it can be shown to be a search sanctioned by a recognized exception. Both the majority and the concurring opinions here find an exception. That exception perforce must rest upon identifying the container in question by some kind of mumbo jumbo as to how closely it resembled an arrestee's pockets, which may be searched incident to a lawful custodial arrest.

Neither the police in the field nor the law-abiding citizen whose rights are constitutionally protected should have to analyze the lawfulness of police conduct by determining whether the container is more like luggage, on the one hand, or a cigarette box, on the other. Both are containers that are not part of the clothing of the citizen.

Both may be taken into the possession of the police without removing the citizen's clothing. If the citizen from whom a container is taken will not voluntarily consent to its search without a warrant, the police may inventory the container as such, i.e., a trunk, a suitcase, a briefcase, a knapsack, a knotted bandana, a paper sack, a purse, a cigarette case, or whatever best describes that container.

The police, the citizenry and the courts of this state would be served best by a simple holding that the Oregon Constitution prohibits the warrantless search of a closed container seized by the police and placed beyond the reach of the arrestee. In a case such as this, the police would know that they must not search the container without first making a showing to a magistrate that there was probable cause to believe the purse contained evidence of crime. Assuming such a showing could be made, I would observe that the same evidence for conviction would have been obtained in accordance with the constitution as was obtained here in a manner judicially approved only after three levels of scrutiny.

Under the simple rule I propose, the arrestee's rights against unreasonable searches would be protected by Article I, section 9, of the Oregon Constitution, and there would be no need to inquire whether the arrestee is deprived of liberty or property without due process of law under the United States Constitution.

I am authorized to say that Justice Linde agrees that this would be the better rule, *see State v. Brown,* 291 Or 642, 656, 634 P2d 212 (1981) (concurring opinion), although he concurs in the majority's statement of Oregon law as it stood before *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), abandoned it in order to follow federal cases.

I dissent.