Argued and submitted July 28, resubmitted in banc
on record and briefs October 6, affirmed October 13, 1980

# STATE OF OREGON,
*Appellant,*

*v.*

# MICHAEL DEAN WIGHT,
*Respondent.*

(No. 6339, CA 16425)

617 P2d 928

William F. Gary, Assistant Attorney General, Salem, argued the cause for appellant. On the brief were James M. Brown, Attorney General, Walter L. Barrie, Solicitor General, and Robert C. Cannon, Assistant Attorney General, Salem.

Edwin N. Storz, Hermiston, argued the cause for respondent. With him on the brief was Dennis R. Ingram, Hermiston.

BUTTLER, J.

**BUTTLER, J.**

The state appeals from an order suppressing contraband seized from defendant's automobile, in which he was a passenger, following a valid stop for a traffic infraction. The question is whether the arresting officer's behavior following the stop was overly intrusive, thereby exceeding the permissible scope of inquiry relating to the traffic reason for the stop. The trial court held that it was; we agree, and affirm.

The events which gave rise to the seizure unfolded as an Oregon state police officer was patroling U. S. Highway I-80 N. near Boardman at about 1 a.m. The officer was in the process of passing a pickup towing a camp trailer when defendant's vehicle, which was directly in front of the pickup, pulled from the right lane into the left lane without signaling. The officer slowed down to avoid overtaking defendant's vehicle, which was traveling at 50 miles per hour in a 55 mile per hour zone. Defendant's vehicle proceeded in the left lane and did a "little bit of weaving" within the lane, and also across the fog line once. The vehicle then changed from the left hand lane to the right hand lane, again without signaling its intention to do so.

The officer pulled in behind the vehicle and activated his overhead flasher lights. The driver stopped the car and the officer pulled in behind. The driver, defendant's brother, got out of the car and met the officer between the two vehicles. The officer asked for identification, the driver produced his operator's license and stated that the vehicle belonged to his brother, the defendant, who was the passenger. There were no license plates on the vehicle. The officer informed the driver and defendant that he had stopped them for a traffic violation, and inquired why the vehicle had no license plates. As he approached the front of the vehicle, he noticed a valid temporary license affixed to the windshield, and upon questioning defendant, defendant produced a bill of sale covering the vehicle.

The officer then asked if they had any beer or marijuana in the automobile, and defendant produced a partially empty can of light beer. The officer asked again if there was any marijuana in the car, at which time the driver produced a small amount of marijuana from the glove compartment. Thereupon the officer advised the driver and the defendant of their constitutional rights and made a full search of the vehicle without the consent of the driver or defendant, which resulted in the discovery of a small quantity of hashish and LSD. Both men were then arrested.

In *State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978), this court, sitting in banc, discussed at length the question here presented, and stated the following conclusion with respect to the permissible intrusiveness of a stop:

"The constitutional and statutory law blends into a single rule: Traffic stops should be the minimum possible intrusion on Oregon motorists, and not an excuse to begin questioning, searching or investigating that is unrelated to the traffic reason for the stop.

"* * * * *

"Simply stated, when the 'records check' came back 'clear,' Officer Miller could do no more than write a citation and send defendants on their way. He could not begin questioning or an investigation that had nothing to do with the objective reason for the stop (speeding). If he did so, the officer extended the duration of the stop without legally sufficient articulated cause." 34 Or App at 32-33.

On review, the Supreme Court accepted that view. *State v. Carter/Dawson,* 287 Or 479, 600 P2d 873 (1979). We think that conclusion is dispositive here. Once the officer cleared the driver's license, the registration and the ownership of the automobile, he could do no more than write a citation for the traffic violation and send the defendant and his brother on their way.

The state, however, contends that here the officer had an articulable basis for believing the driver of the automobile (not the defendant) might be driving under the influence of alcohol or drugs, because of the

"weaving movement" of the automobile and the making of two unsignaled lane changes (the objective reason for the stop). Whatever the officer's conjecture may have been was quickly dispelled when the driver met the officer face to face, standing outside of his automobile, and evidenced no sign of being under the influence of anything.

The officer, however, testified at the suppression hearing that the fact that the driver got out of the automobile when stopped led the officer to suspect that the driver might have been attempting to prevent the officer from observing something in the car. In *Carter/Dawson,* the driver (Carter) also got out of the car after being stopped and met the officer near the rear of the stopped vehicle. Further, the officer in *Carter/Dawson,* while checking out the vehicle registration, observed that defendant Dawson, the passenger, appeared to be unsteady on his feet, his eyes bloodshot, and his speech slurred. *State v. Carter/Dawson, supra,* 287 Or at 482-83. Those facts, however, were held to be insufficient to justify the officer's making further inquiry of the defendants as to what they had in the car—even though, after making the further inquiry, the officer saw in plain view "cigarette papers, hand-rolled cigarettes, and what appeared to be marijuana debris." 287 Or at 484. Because the inquiry was not justified, we held that the officer extended the duration of the stop without legally sufficient articulated cause, and all evidence, even that in plain view, was suppressed.

The state also contends that because the officer observed the defendant bend over in his seat after the officer turned on his flashers, that "furtive gesture," as the officer characterized it, justified the inquiry after the stop. However, that observation, by itself, leads to nothing more than conjecture. If the officer had reasonably concluded from the driver's conduct upon getting out of the automobile that the driver was under the influence of alcohol or drugs, that fact, coupled with the observation of the defendant bending over might well justify further inquiry.

But that is not the case here. The officer testified that the driver appeared normal in every respect.

We conclude that this case is indistinguishable from *Carter/Dawson,* and affirm the trial court's order suppressing the evidence seized in the unlawful search.

Affirmed.

### THORNTON, J., dissenting.

For reasons which follow, I conclude that the majority is in error in holding that there was no reasonable suspicion for the officer to make a limited inquiry of defendant and the driver concerning the possession of liquor or contraband in the car.

First, the weaving movement of defendant's auto, the crossing of the fog line and the making of two improper lane changes was an indication that the operator might be driving under the influence of alcohol or drugs. The officer testified to his reasonable suspicion that the driver of the vehicle may have been drinking or was under the influence of drugs.

Second, after the officer turned on his overhead flashing lights, the action of the passenger, who turned out to be this defendant, in leaning forward and appearing to place or remove some object from under the seat— an important fact which was omitted from the statement of facts in the majority opinion— was a strong indication that defendant was attempting to hide some object, such as contraband or a weapon, from the approaching police officer.[1]

Third, the fact that the driver, defendant's brother, immediately dismounted from the auto and met the officer in front of the patrol car was a further basis for suspecting a violation of the open container

---

[1] This movement has been termed in police parlance as the "forward lean." Some courts have held this to be a "furtive gesture" or conduct which reasonably led the officer to believe that the suspect was trying to hide evidence under the seat or on the floor and afforded, in combination with other factors, a reasonable basis for stopping and searching the car. *See* cases collected in Annotation, Search and Seizure— Furtive Gesture, 45 ALR3d 581 (1972).

law or concealment of contraband because, as the officer testified, the driver might have been attempting to prevent the officer from observing something in the car. From all the above facts the officer was justified in asking the defendant and the driver if they had any liquor or marijuana in their auto. Although this is a close case, I believe that the objective facts set forth above tended to corroborate the officer's earlier conjecture that the occupants of the auto might be transporting liquor or drugs.

ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

I conclude from these facts that this officer, while conducting a general on-the-scene investigation, had a right to make a limited inquiry whether the occupants had any alcohol or drugs in the vehicle. ORS 131.615; *State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979). *Cf. State v. Carter/Dawson,* 287 Or 679, 600 P2d 873 (1979).

For the above reasons, I respectfully dissent.

Richardson, J., joins in this dissenting opinion.