Argued and submitted July 6, 1983, affirmed and remanded to circuit court

## STATE OF OREGON,
*Respondent on review,*

*v.*

## DARYL SCOTT JACKSON,
*Petitioner on review.*

(Nos. 10-81-11077, 10-81-02508,
CA A24955, A24956, SC 29473)

677 P2d 21

Robert J. McCrea, Eugene, argued the cause for petitioner on review. With him on the petition and brief was Morrow, McCrea & Divita, P.C., Eugene.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent on review. On the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

JONES, J.

Lent, J., filed a dissenting opinion in which Linde and Roberts, JJ., join.

## JONES, J.

The issue is whether the trial court should be reversed for ordering suppression of evidence obtained by a traffic officer's flashlight observation of the interior of a motor vehicle that he had stopped for a traffic infraction.

We quote from the trial court's findings:

"On the night of February 20, 1981, Defendant as the operator of a van entered upon East 11th Avenue from an alley between Mill and Ferry Streets in the City of Eugene, Oregon. East 11th Avenue is a one way street but no signing to that effect was posted for motorists coming onto it from that alley and Defendant turned the wrong way, discovered the error at the first intersection he came to and exited 11th Avenue at that point. Officer Tatum of the Eugene Police Department observed these movements and stopped Defendant's vehicle.

"Defendant's vehicle bore California plates and, upon request of the officer, Defendant displayed a valid California operator's license and valid California vehicle registration.

"The officer returned to his patrol unit and then resumed contact with Defendant.

"* * * * *

"For some reason the officer then proceeded from the driver's side around the front of the van to the passenger side, and a step or two beyond where he was then positioned beside the sliding door used for ingress and egress from the compartment of the van behind the driver's and passenger's seats. The officer flashed his light through the window at the sliding door and observed two beer cans which he thought might contain alcohol and thus be in violation of 'the open container' law.

"The location of these cans is in dispute. The officer testified they were on the console between the driver and passenger seats. The Defendant testified they were on a stool behind those seats. A more probing search would have been necessary to see them if they were where the officer recalled them being than would have been required had they been at the location described by the Defendant.

"The presence of the open beer cans motivated the officer to enter the vehicle whereupon he came upon other unrelated contraband."[1]

---

[1] ORS 487.843 makes it a Class B traffic infraction to have an open container containing alcoholic liquor in the passenger compartment of a motor vehicle upon a highway.

Eventually, defendant "was issued citations for the possession of less than an ounce and for open container."

The defendant later was indicted on felony charges of unlawful possession of controlled substances, *i.e.,* LSD and cocaine, which were substances found by the officer when he searched in the van.

In the trial court, the defendant moved to suppress the evidence obtained from his vehicle on the ground that it was unlawfully obtained because:

"(1)  The searches and seizures were performed without a warrant;

"(2)  No probable cause existed;

"(3)  No exigent circumstances existed;

"(4)  There was no valid consent;

"(5)  The searches and seizures were not otherwise lawful or justified."

He subjoined to his motion as authorities upon which he relied the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9, of the Oregon Constitution.

On appeal, the defendant contended that the officer had unlawfully detained defendant after all matters concerning the initial stop had been "satisfactorily processed" and that the officer "examined the interior of his vehicle visually during this detention." He cited to the trial court *State v. Carter/Dawson,* 287 Or 479, 600 P2d 873 (1979), and *State v. Wight,* 48 Or App 731, 617 P2d 928 (1980), in support of that contention. Because the defendant prevailed at the trial court level on this first issue, his other contentions raised at trial were not asserted in this appeal.[2]

---

[2] Defendant made other arguments in support of his motion to suppress. Defendant contended that the police had entered his van ostensibly because of violation of the open container law when "from their observations they could not determine whether or not such containers would constitute a violation."

Next, defendant argued that the police had searched through an ash tray and through other areas of the van after seizing two beer cans and without any further probable cause.

He also contended that the police had searched through his van and into closed containers without a search warrant and without the defendant being under arrest.

Finally, defendant made written arguments concerning his contention that other containers had been opened, searched and the contents seized without warrant and without probable cause, and prior to his arrest.

The trial court, having made the findings quoted above, came to the following conclusions:

"It is the opinion and conclusion of this Court that the officer having made the stop for driving the wrong way on a one way street and having concluded that defendant was the lawful owner and operator of the vehicle had, at that point, nothing before him to arouse a reasonable suspicion that he should conduct further inquiry or inspection or examination of the contents of the vehicle. Nothing was before him to reasonably provoke his circling to the opposite side of the van and conducting a flashlight search into the interior spaces of the van from that or any vantage point.

"The officer testified he thought he observed the Defendant bump or knock over the beer cans. This occurred before he saw beer cans in the vehicle. This Court discerns nothing in that testimony to suggest the movement was furtive, was done to conceal anything, was an effort to reach or conceal a weapon or was in any manner untoward or of a nature leading a person to suspect further investigation or search would be required.

"This Court concludes the principles applied in *State v. Carter/Dawson* control and that evidence was wrongfully seized and should therefore be suppressed. However, such of the evidence seized which is contraband must be destroyed rather than returned to the Defendant."

As mentioned, because the trial court found that the officer conducted an investigation beyond what the trial court concluded was permissible under *State v. Carter/ Dawson, supra,* the trial court did not find it necessary to resolve conflicts in the evidence that would be pertinent to other legal issues raised by defendant's motion to suppress.

The state appealed, contending that the trial court had misapplied the "rationale and holding" of *Carter/Dawson.* The state, therefore, asked the Court of Appeals to reverse the trial court's order of suppression and to remand the case to the trial court for resolution of the factual disputes presented by the evidence and for further consideration of the legality of the "search and seizure" of items inside the vehicle.

The defendant, in his brief in the Court of Appeals, defended the trial court's application of *Carter/Dawson* and

contended that that case and *State v. Wight, supra,* established an "Oregon rule" not dependent upon Fourth Amendment law. The defendant argues that the officer's circling the front of the van and shining the flashlight into the passenger side window was an impermissibly intrusive invasion of his privacy, not necessitated by the traffic stop or by other exigent circumstances. The defendant claims that the officer began an investigation unrelated to the traffic stop without any articulable sensory perceptions to justify such action. The state urges that the central issue is the permissible "duration of a stop" for a minor traffic infraction.

The Court of Appeals adopted the state's argument by concluding that the extension of the time of the stop by that action of the officer was "de minimis." The Court of Appeals stated:

"Defendant's primary argument seems to be that *anything* that could be termed an 'investigation' unrelated to the offense for which defendant was stopped is unlawful under *Carter/Dawson.*[3] Although we used the word 'investigation' in that opinion, we are not willing to extend *Carter/Dawson* to prohibit the officer's actions here. We agree with the state that '* * * the holding of that case does not require a police officer to confine himself to the bare minimum of activities necessary to issue a traffic citation.' Therefore the evidence was improperly suppressed.

---

"3. Defendant does not rely on the fact that a flashlight was used, nor does he contend that the officer's action was a 'search.' "

This brings us to a consideration of the decision in *Carter/Dawson.*

When *Carter/Dawson* was first argued before this court, the question of the intrusiveness of a police officer's behavior was at issue. Our concern for this issue caused us to order reargument of the case; however, both sides responded that the only issue before this court was the validity of the traffic stop itself. Consequently, the intrusiveness issue was not considered. In the present case, the validity of the traffic stop is not in dispute. To analyze the intrusiveness issue, we revisit the Court of Appeals decision in *State v. Carter/ Dawson,* 34 Or App 21, 578 P2d 790 (1978).

In *Carter/Dawson,* a police officer stopped a car for a speeding violation. After a cursory examination of licenses and a running of a "records check," the officer asked questions about the car's contents, attempted to elicit permission to look in the car and then observed marijuana and related paraphernalia. The Court of Appeals concluded that such an investigation after a negative records check was impermissibly intrusive. The court said:

> "Two bodies of law are germane to what an officer may do after making a traffic stop in Oregon. One is constitutional. An officer may, constitutionally, search the person of the driver incident to custodial arrest, *State v. Florance,* [270 Or 169, 527 P2d 1202 (1974)], but assuming *State v. Krogness,* 238 Or 135, 388 P2d 120, *cert den* 377 US 992 (1964), is still good law, may not, constitutionally, search the interior of the vehicle based solely on a stop for a traffic offense.

> "Moreover, constitutional law provides that a stop can be no more intrusive than necessarily required by the objective reason giving rise to the stop. *State v. Evans,* 16 Or App 189, 517 P2d 1225, *rev den* (1974). ORS 131.615 appears to codify the constitutional limitation:

> '\* \* \* \* \*

> '(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

> '(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion.'

"Detention and inquiry beyond the time, place and subject-matter limits codified in ORS 131.615—all components of what we call 'intrusiveness'—constitute an invalid 'random intervention into the liberty and privacy of a person.' *State v. Evans,* 16 Or App at 197.

"The other relevant body of law is solely statutory. ORS 484.435 provides:

> " '(1) Searches and seizures otherwise authorized by law incidental to an arrest shall not be authorized if the arrest is on a charge of committing a Class B, C or D traffic infraction unless the arrest is a full custody arrest in which the person arrested is to be lodged in jail, and the decision to place the person arrested under full custody arrest is based upon specific articulable facts justifying his being

lodged in jail rather than being given a traffic citation as provided in this chapter and released.

" '(2) Nothing in subsection (1) of this section shall be construed to forbid a frisk for dangerous or deadly weapons authorized under ORS 131.605 to 131.625.' " 34 Or App at 31-32.

The state in the case at bar contends ORS 131.615 (quoted above) is limited to police stops and on-the-scene investigations of crimes and that "crimes" by definition do not include traffic offenses. In the present case, defendant was stopped for proceeding in the wrong direction on a designated one-way way street. Such conduct is a Class B traffic infraction. ORS 484.353(2)(b) provides:

"A police officer:

"* * * * *

"(b)   May stop and detain a person for a traffic infraction for the purpose of investigation reasonably related to the traffic infraction, identification and issuance of citation."

ORS 484.353(2)(b) was enacted some six months after the challenged police conduct in this case. The stop occurred on February 20, 1981.

Neither ORS 131.615 nor ORS 484.353(2)(b) applies to this stop. ORS 131.615 authorizes only a stop and detention of a person a police officer reasonably suspects has committed a crime. ORS 484.353(2)(b) is applicable only to infractions, but was not yet effective. As stated by Judge Schwab in *Carter/Dawson,* "ORS 484.435(1) expresses a legislative preference for issuance of citations in lieu of custodial arrests and enacts a legislative limitation on searches of motorists stopped for traffic offenses * * *." 34 Or App at 32. Here, we are not dealing with a search of a motorist. Therefore, none of the three statutes analyzed in *Carter/Dawson* is applicable to this case.

The ultimate conclusion reached in *Carter/Dawson* dealing with the intrusiveness of the stop has not been addressed by this court. The Court of Appeals concluded in *Carter/Dawson* that the officer's behavior was to be tested by the following standard:

"The constitutional and statutory law blends into a single rule: Traffic stops should be the minimum possible intrusion

on Oregon motorists, and not an excuse to begin questioning, searching or investigating that is unrelated to the traffic reason for the stop." 34 Or App at 32.

We quoted this statement in our review of *Carter/Dawson*, 287 Or at 486, but did not expressly adopt it.

The police officer's conduct in the instant case clearly is different than that of the officer in *Carter/Dawson*. The significant time for the duration of the stop in the case at bar appears to be the brief time during which the officer walked from the driver's side of the van around the front of the van to the passenger side. This is apparently the critical point of the defendant's case. We agree with the Court of Appeals decision in this case that this delay was "de minimis" and did not constitute a violation of Oregon statute, nor violate any state or federal constitutional right.[3]

Were the defendant to prevail here, an interpretation of the Court of Appeals standard would seem to dictate that once an officer returns an operator's license to the driver of a stopped vehicle, he or she must execute an abrupt about-face and march directly back to the police vehicle. Such an interpretation would not be reasonable. An officer who has lawfully stopped a vehicle does not violate any occupant's rights in walking around the vehicle and looking through the windows of the vehicle to observe that which can be plainly seen.[4] *See, State v. Louis*, 296 Or 57, 672 P2d 708 (1983).

We hold that the officer's actions in this case were not illegally intrusive. They were not based on an excuse to begin searching or investigating for contraband or other crime evidence unrelated to the traffic reason for the stop and, therefore, did not violate Article I, Section 9, of the Oregon

---

[3] The defendant cites no specific constitutional violation in his respondent's brief or petition for review. However, as mentioned, the defendant did cite Article I, Section 9, of the Oregon Constitution, and the Fourth and Fourteenth Amendments to the United States Constitution in his original motion to suppress in the trial court.

[4] The defendant makes no complaint that a flashlight was used to enhance visibility at night. Apparently the beer cans would have been in plain view in the interior of the van in a daylight inspection from the street. The Supreme Court of the Unites States in *Texas v. Brown*, ____ US ____, 103 S Ct 1535, 75 L Ed 2d 502 (1983), held that an officer's action in shining his flashlight to illuminate the interior of a defendant's stopped car trenched upon no right secured by the Fourth Amendment. Since the issue was not raised, we do not accept or reject this federal interpretation for application to Article I, Section 9, of the Oregon Constitution.

Constitution. *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

We also find no violation of any United States constitutional right secured by the Fourth or Fourteenth Amendments. In *Texas v. Brown,* ___ US ___, 103 S Ct 1535, 75 L Ed 2d 502 (1983), the Supreme Court of the United States addressed the issue of whether an officer's actions during a car stop constituted a search within the meaning of the Fourth Amendment:

> "* * * [T]he fact that Maples [the police officer] 'changed [his] position' and 'bent down at an angle so [he] could see what was inside' Brown's car * * * is irrelevant to Fourth Amendment analysis. The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason Maples should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy, *Katz v. United States, supra,* 389 US, at 361, 19 L Ed 2d 576, 88 S Ct 507 (1967) (Harland, J., concurring); *Smith v. Maryland,* 442 US 735, 739-45, 61 L Ed 2d 220, 99 S Ct 2577 (1979), shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive pas-sersby or diligent police officers. In short, the conduct that enabled Maples to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment." (First bracket ours.) ___ US at ___ (75 L Ed 2d at 512-13).

In the present case, the officer similarly observed what he believed to be contraband or evidence of a crime. He testified he saw open and upright beer cans inside defendant's van which had been lawfully stopped on a public street. The officer was not constrained by federal constitutional considerations to remain stationary near the driver's door of defendant's van merely because the officer's investigation into the traffic violation involved initial contact with the driver. Thus, the rationale and holding of *Texas v. Brown* apply to this case inasmuch as they affirm that such activities do not impinge upon recognizable federal constitutional protections.

We have determined that the officer was validly on the passenger side of the van. We cannot conclude one way or the other that his observation of the beer cans made it "immediately apparent" that a violation of law had occurred.

*See, Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971).

In other words, we cannot tell from the trial judge's findings whether the beer cans were open and upright as contended by the state or empty and not sitting up as contended by the defendant. The trial court merely referred to the fact that the officer "observed two beer cans" which he thought might contain alcohol. No findings or conclusions were made by the trial court that would provide the answer to the issue of whether the officer's observation of the beer cans made it "immediately apparent" that a violation of law had occurred.

As we interpret the record, the trial judge recognized the intrusiveness issue, but never made relevant findings of fact on that issue because he felt that the act of the officer looking through the window of the right side of the van violated the Court of Appeals decision in *Carter/Dawson.* The rule from *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), and *State v. Hansen,* 295 Or 78, 82, 664 P2d 1095 (1983), that when the trial court does not make express findings the Court of Appeals and this court must presume that conflicts in the evidence were resolved by findings of fact that are consistent with the ultimate conclusion of the trial court, is inapplicable. The trial judge never made *any* conclusions about the "immediately apparent" violation issue.

■     We believe the record is capable of different interpretations whether an open container violation was "immediately apparent."[5] If the trial court makes findings of fact that

---

[5] There was a direct conflict in the evidence as to the location and position of the beer cans when the officer observed them from his place outside the vehicle. The officer testified that they were on the floorboard about six inches or so behind the defendant and front seat passenger and that the cans were upright. He testified that at that point he asked the passenger to get out so he could look at the cans. He testified that at that time he formed a belief that the open container law had been violated. He testified that when the passenger got out defendant reached over and tipped over the cans, spilling the contents on the floor. On cross-examination, the officer's testimony was somewhat different. He conceded that from outside the vehicle he could see the cans were open but that they could have been empty. He did testify that in his experience if the cans are empty they are lying flat. He also testified that "those beer cans were sitting down between the seats."

Defendant's testimony in this particular was diametrically opposed. He testified that one cannot even see from the place where the officer looked into the vehicle the area where the officer contended the cans were. Defendant further swore that there

justify a conclusion that a violation of law was "immediately apparent," the officer's subsequent search and seizure of evidence must be evaluated in light of the defendant's other listed unresolved contentions.

The Court of Appeals decision is affirmed and this case is remanded to the circuit court for further proceedings.

**LENT, J.,** dissenting.

What a police officer in Oregon making a stop for a traffic infraction might now do is governed by statute. In 1981 the legislature enacted what is now codified as ORS 484.353(2)(b), which provides:

"A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of a citation."

This case arose before the effective date of that statute, and the decision here concerns the rather narrow question of the *authority* a police officer had *under prior law* to engage in a flashlight enhanced observation of the interior of the passenger compartment of a vehicle after he had obtained all necessary information to issue a citation for the infraction.

Despite the fact that the police officer's conduct in like instances is now governed by ORS 484.353(2)(b), and the bones of this case are hardly worth picking, I shall note my disagreement with the majority as to what was the prior state of the law.

I agree with the trial court that the decision in *State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978), governs this case and that this defendant should prevail. It is to be remembered that the trial court concluded that the "flashlight search" from the passenger side of the van offended the holding of *Carter/Dawson* and that this case came to the appellate process upon appeal by the state.

On appeal the state contended that the trial court had misapplied the "rationale and holding" of *Carter/Dawson.* The state, therefore, asked the Court of Appeals to reverse the trial court's order of suppression and to remand for the trial

---

were beer cans two to three feet behind the driver's seat in the cargo portion of the vehicle and that cans had spilled out of a sack but that they were empty and not sitting up.

court to resolve the factual disputes presented by the evidence and for further consideration of the legality of the "search and seizure" of items inside the vehicle. The state argued that other Oregon decisions applied and that *Pennsylvania v. Mimms,* 434 US 106, 98 S Ct 330, 54 L Ed2d 331 (1977), was authority for the proposition that the officer's conduct did not offend the federal constitution.

The defendant, in his brief in the Court of Appeals, defended the trial court's application of *Carter/Dawson* and contended that that case and *State v. Wight,* 48 Or App 731, 617 P2d 928 (1980), established an "Oregon rule" not dependent upon Fourth Amendment law. Furthermore, defendant argued that the officer's actions in walking around the front and down the passenger's side of the van so extended the duration of the stop as to be unlawful, although, as the Court of Appeals, 62 Or App at 10, recognized, that was not defendant's primary argument.

The Court of Appeals disposed of the last argument by concluding that the extension of the time of the stop by that action of the officer was de minimis because that action took less time than the questions asked by the traffic officer in *State v. Wight, supra.* In that case the officer stopped a vehicle for changing lanes without signal and weaving:

> "The officer pulled in behind the vehicle and activated his overhead flasher lights. The driver stopped the car and the officer pulled in behind. The driver, defendant's brother, got out of the car and met the officer between the two vehicles. The officer asked for identification, the driver produced his operator's license and stated that the vehicle belonged to his brother, the defendant, who was the passenger. There were no license plates on the vehicle. The officer informed the driver and defendant that he had stopped them for a traffic violation, and inquired why the vehicle had no license plates. As he approached the front of the vehicle, he noticed a valid temporary license affixed to the windshield, and upon questioning defendant, defendant produced a bill of sale covering the vehicle.

> "The officer then asked if they had any beer or marijuana in the automobile, and defendant produced a partially empty can of light beer. The officer asked again if there was any marijuana in the car, at which time the driver produced a small amount of marijuana from the glove compartment. Thereupon the officer advised the driver and the defendant of

their constitutional rights and made a full search of the vehicle without the consent of the driver or defendant, which resulted in the discovery of a small quantity of hashish and LSD. Both men were then arrested."

48 Or App at 733-734. The court ruled that the decision in *Carter/Dawson* was dispositive, stating:

"Once the officer cleared the driver's license, the registration and the ownership of the automobile, he could do no more than write a citation for the traffic violation and send the defendant and his brother on their way."

48 Or App at 734.

The analysis in *State v. Wight, supra,* did not purport to be based upon the *time* that it took to go fishing but rather on the fact that the fishing was impermissible. From the standpoint of an otherwise innocent motorist who is stopped for a traffic infraction, it is the fact of the intrusion beyond that necessary to investigate the infraction, not the fact of the duration that is *legally* significant. The decision of the Court of Appeals in *Wight* did not purport to turn upon the amount of extra time consumed by the officer's investigation of matters other than traffic infractions. Rather, it specifically turned upon the fact that the officer extended the duration of the stop at all for purposes other than the investigation of the traffic infraction.

The Court of Appeals, in the case at bar, then turned to defendant's argument based upon *Carter/Dawson* and quickly struck it down:

"Defendant's primary argument seems to be that *anything* that could be termed an 'investigation' unrelated to the offense for which defendant was stopped is unlawful under *Carter/Dawson*.[3] Although we used the word 'investigation' in that opinion, we are not willing to extend *Carter/Dawson* to prohibit the officer's actions here. We agree with the state that '* * * the holding of that case does not require a police officer to confine himself to the bare minimum of activities necessary to issue a traffic citation.' Therefore the evidence was improperly suppressed.

"3.  Defendant does not rely on the fact that a flashlight was used, nor does he contend that the officer's action was a 'search.' "

This brings me to a consideration of the decision in *Carter/Dawson.* The Court of Appeals has summarized the facts in that case as follows:

"In *Carter/Dawson,* the police stopped a car for speeding. After examining the licenses of the car's occupants and running a 'records check' on the car, the officer asked questions about what was in the car, asked permission to look in and doing so without permission saw marijuana and related paraphernalia."

*State v. Jackson,* 62 Or App at 9-10, 660 P2d at 184. In *Carter/Dawson* the Court of Appeals held that conduct of the officer which occurred after the "records check" was unlawful, both under statute and from a constitutional standpoint.

To reach that result, the Court of Appeals first took note of many of this court's and its own decisions and came to the first legal premise of the holding in that case:

"Moreover, constitutional law provides that a stop can be no more intrusive than necessarily required by the objective reason giving rise to the stop. *State v. Evans,* 16 Or App 189, 517 P2d 1225, *rev den* (1974). ORS 131.615 *appears to codify the constitutional limitation:* [Emphasis added]

" '* * * * *

" '(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

" '(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion.'

"Detention and inquiry beyond the time, place and subject-matter limits codified in ORS 131.615—all components of what we call 'intrusiveness'—constitute an invalid 'random intervention into the liberty and privacy of a person.' *State v. Evans,* 16 Or App at 197."

34 Or App at 31. Thus, in *Carter/Dawson* the Court of Appeals drew attention to ORS 131.615, not for its impact as statutory law, but for its embodiment of constitutional law. This appears also from the very next sentence in which that court stated that the "other relevant body of law is solely statutory" and moved on to the second premise of its decision. The court

pointed to ORS 484.435(1)[1] and accurately characterized that statute as favoring a legislatively imposed limitation on arrest, search and seizure in traffic stops.

After outlining those premises, the Court of Appeals in *Carter/Dawson* stated:

"The constitutional and statutory law blends into a single rule: Traffic stops should be the minimum possible intrusion on Oregon motorists, and not an excuse to begin questioning, *searching or investigating* that is unrelated to the traffic reason for the stop." (Emphasis added)

The court concluded that after the records check came back clear the officer could do no more than to write a citation and send defendants on their way.

"He could not begin questioning *or an investigation* that had nothing to do with the objective reason for the stop (speeding). If he did so, the officer extended the duration of the stop without legally sufficient articulated cause." (Emphasis added)

34 Or App at 33.[2]

In its decision in the case at bar, the Court of Appeals purports to distinguish its holding in *Carter/Dawson.* I find the distinction to be invalid. In the instant case the Court of Appeals treats its decision in *Carter/Dawson* as if it involved only questioning. It did not. It also involved the officer peering into the vehicle and thereby observing contraband. As I have noted above, the Court of Appeals stated that "[d]etention and inquiry" beyond the constitutional limits embodied in ORS

---

[1] ORS 484.435(1) provided:

"Searches and seizures otherwise authorized by law incidental to an arrest shall not be authorized if the arrest is on a charge of committing a Class B, C or D traffic infraction unless the arrest is a full custody arrest in which the person arrested is to be lodged in jail, and the decision to place the person arrested under full custody arrest is based upon specific articulable facts justifying his being lodged in jail rather than being given a traffic citation as provided in this chapter and released."

That subsection was still the law at the time this stop was made in February, 1981. It was repealed by Or Laws 1981, ch 818, § 47, and replaced by present ORS 484.353(2)(b), which was enacted by Or Laws 1981, ch 818, § 18.

[2] This court allowed review in *Carter/Dawson* but concluded that the reasoning and decision of the Court of Appeals on the issue of the officer's further investigation was not before us. *See, State v. Carter/Dawson,* 287 Or 479, 488, 600 P2d 873 (1979).

131.615, subsumed by that court as "intrusiveness," constitute an invalid "random intervention into the liberty and privacy of a person."

Also as noted above, the Court of Appeals has affirmed and applied its holding in *Carter/Dawson* in *State v. Wight, supra.* In the latter case, that court held that when the officer had completed his check of operator's license, registration and ownership, "he could do no more than write a citation for the traffic violation and send the defendant and his brother on their way." That court purports to distinguish its decision in *Wight* by explaining that *Wight* involved "questioning" after the traffic investigation, while this case involves only observation by peering into a window on the side of the van behind the front seats.[3]

It is true that after the "records check" in *Wight* only questioning was initially involved, but this soon developed into further investigation by way of arrest and search.

Nothing in *Carter/Dawson* or in *Wight* would lead one to believe that the court was concerned only with oral questioning or inquiry or that the court believed that it was the duration of unwarranted investigation that was the key to either decision.

---

[3]In footnote 3, 62 Or App at 11, the Court of Appeals states: "Defendant does not rely on the fact that a flashlight was used, nor does he contend that the officer's action was a 'search.'" It must be kept in mind that the defendant was the respondent and was defending the trial court's holding that the further investigation by the officer at the passenger's side of the vehicle was impermissible under the Court of Appeals' decision in *Carter/Dawson*. As defendant said in his brief:

"Obviously, he did more than just write the citation and send the defendant on his way. Just as clearly, it was prohibited investigation.[1]

---

"1. The State objects to the court's use of the term 'search.' The court could have called it 'flashlight investigation' and the principle remains the same. It was activity that illegally extended the duration of the stop."

---

"* * * * *

"The State gains nothing from their contention that shining the flashlight in, or looking in, was not a search. It does not have to be a search. The rule clearly states that 'questioning' or 'investigation' is sufficient."

Perhaps defendant would have made more of an argument concerning flashlight enhancement had the instant case followed publication of our decision in *State v. Louis,* 296 Or 57, 672 P2d 708 (1983).

I believe the decisions in those two cases were sound and should be applied here. They drew a "bright line," one comparatively easy for the officer in the field to follow and for the trial court to apply, as the trial court, though not the officer, did in this case. The trial court made no express finding that the officer had completed those portions of the investigation necessary to the traffic infraction and the issuance of a citation. He ordered suppression on the basis that he found there had been further investigation forbidden by *Carter/Dawson.* We must, under *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), presume he made that finding, for only if he did so would he have found the rule of *Carter/Dawson* to require suppression.[4]

In our review in *State v. Carter/Dawson, supra,* we did not reach the issue about which the trial court in this case was concerned. We do now, and I approve the reasoning and holding of the decision of the Court of Appeals there and in *State v. Wight, supra.* I would recognize, as did the Court of Appeals, what the defendant here terms "the Oregon rule." It follows that the defendant's rights have been found to be protected as a matter of state statutory and constitutional law, and there is no reason to examine his further claim that he has been denied by the State of Oregon due process of law under the Fourteenth Amendment to the federal constitution.

What I have to say hereafter about the plurality opinion in *Texas v. Brown,* ___ US ___, 103 S Ct 1535, 75 L Ed2d 502 (1983), is unnecessary to a decision in the case at bar. I discuss that case only because the state has vigorously argued that it is on all fours with the case at bar, and that we should interpret state law as being in harmony with federal constitutional Fourth Amendment law, as in *Brown* pronounced. *Brown* is not on all fours.

The facts[5] in *Brown* were that the police officer stopped defendant's car as part of a routine and "nonrandom"

---

[4]There is an abundance of evidence in the record to support the presumed finding. The officer candidly conceded that he had all information necessary to issue the citation for traveling the wrong way on the one-way street and only needed to return to his own vehicle to get his citation book to issue the citation. He did not articulate any reason whatsoever to conduct any further investigation to determine if the van contained contraband. Nevertheless, he did investigate by peering into the window, and he did enhance his opportunity by use of a flashlight. *Cf State v. Louis, supra.*

[5]I take the facts from *Brown v. State,* Tex Cr App, 617 SW2d 196 (1981), and from the plurality opinion of the Supreme Court of the United States.

license check. The officer asked for defendant's driver's license and shined his flashlight into the car. Defendant, while still seated in the car, put his hand into the right front pocket of his trousers and when he withdrew his hand "partially" out of his pocket there was a partially folded dollar bill in defendant's hand, and there was a small green ballon stuck between his fingers, which he dropped on the seat of the car.[6] Based upon his experience, the officer knew that narcotics were often packaged in such balloons. Defendant then reached across and opened the glove compartment. The officer shifted his position at the driver's window in order to obtain a better view of the interior of the glove compartment and noticed that it contained plastic vials, loose white powder and an open bag of party balloons. Defendant rummaged around through the glove compartment and then told the officer he didn't have a driver's license. The officer then had Brown get out of the car and reached in and seized the balloon and eventually the contents of the glove compartment. The Supreme Court of the United States held that the officer's conduct did not offend the precepts of the Fourth Amendment:

> "Applying these principles, we conclude that Officer Maples properly seized the green balloon from Brown's automobile. The Court of Criminal Appeals stated that it did not 'question . . . the validity of the officer's initial stop of appellant's vehicle as a part of a license check,' Pet A-10, and we agree. Delaware v. Prouse, 440 US 648, 654-655, 59 L Ed 2d 660, 99 S Ct 1391 (1979). It is likewise beyond dispute that Maples' action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in United States v. Lee, 274 US 559, 563, 71 L Ed 1202, 47 S Ct 746 (1927), that '[The] use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution.' Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.

---

[6] It never ceases to amaze this writer that persons who unlawfully possess dope are so careless in handling the dope as to expose it unnecessarily to a police officer conducting a traffic investigation. Perhaps it is some felt need for punishment that would be familiar to Sigmund Freud but seems foreign to me. On the other hand, perhaps the explanation lies in another direction. *See,* the extensive discussion of similar conduct in Sevilla, *The Exclusionary Rule and Police Perjury,* 11 San Diego L Rev 839, 863-875.

"Likewise, the fact that Maples 'changed [his] position' and 'bent down at an angle so [he] could see what was inside' Brown's car, J App, at 16, is irrelevant to Fourth Amendment analysis. The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason Maples should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy, Katz v. United States, supra, 389 US at 361, 19 L Ed 2d 576, 88 S Ct 507 (1967) (Harlan, J., concurring); Smith v. Maryland, 442 US 735, 739-745, 61 L Ed 2d 220, 99 S Ct 2577 (1979), shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled Maples to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment." (Footnote omitted)

___ US at ___, 103 S Ct at 1541-1542, 75 L Ed2d at 512-513.

The facts in the case at bar are significantly dissimilar. In *Brown* the officer, while just embarking upon his check for a valid driver's license, saw the balloon which aroused his suspicions. In the case at bar the officer had completed his check of driver's license, registration and ownership and records check. In *Brown* the officer made his key observations from the place one would expect to be utilized, namely, the driver's window, during the investigation for which the car had been stopped. Here, the officer's key observations were not made from the vantage point of the traffic officer investigating an infraction and asking for production of proper licensing, and were made after the infraction investigation was completed. The decision in *Brown* does not tell us what would be the result if nothing to excite the officer's suspicion had occurred during the driver's license check and if the driver had had a valid license to display to the officer. It is certainly reasonable to assume that the officer would have waived Brown on his way.

The observation of the Supreme Court of the United States that the officer saw no more than any curious passerby might have seen is just not valid. Brown did not stop his vehicle of his own volition. That the car was in a place where any person could observe its interior was only because Brown was obeying the command of the officer to stop his car and

remain stopped during the license check. A curious passerby could not have required Brown to do either. Neither did Brown of his own volition stop or park his car where a curious passerby, including any passing police officer, could peer into the interior. There is nothing to indicate that Brown would have fumbled about in his pocket to produce a balloon for the ordinary passerby or opened his glove compartment and rummaged about therein to expose the other contraband that Officer Maples from his place at the driver's window was able to see. There is nothing to indicate that Brown would have stood still for one minute to allow the ordinarily curious passerby in the street to stand at the driver's window and shine a flashlight into the interior of his vehicle.

In the case at bar, arguably, the officer saw no more from the right hand side window than what a curious passerby might have seen in the stopped vehicle. The curious passerby would not have had the opportunity to see the beer cans, however, for the vehicle remained where that observation could have been made only because the defendant was not free to leave until the officer had issued the contemplated citation.[7]

I conclude that the trial court should be affirmed in its judgment under the pre-1981 law that the evidence should be suppressed and the contraband destroyed.

The judgment of the Court of Appeals should be reversed.

Finally, I would emphasize that the present case does not decide the issue presented by the officer's use of a flashlight to enable him to see into the interior of the van. The majority opinion states that this issue was not presented by the defendant on appeal and on review. Although I disagree with that procedural ruling, it leaves open to another day whether the enhancement of the officer's capacity to see into the interior of a "stopped" vehicle by shining a light into the van turned a casual "plain view" into a warrantless search for purposes of Article I, section 9, of the Oregon Constitution.

Linde and Roberts, JJ., join in this dissenting opinion.

---

[7]Whatever may be the ramifications of the decision in *Texas v. Brown*, _____ US _____, 103 S Ct 1535, 75 L Ed2d 502 (1983), I note that one state court has already refused to follow the decision with respect to interpreting its own state constitution. *See State v. Ball*, 471 A2d 347 (1983).