## STATE OF OREGON,
*Appellant,*

*v.*

## DARYL SCOTT JACKSON,
*Respondent.*

(10-81-11077 and 10-81-02508; CA A34461)
(Cases Consolidated)

719 P2d 1312

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause and filed the brief for appellant. With him on

the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Robert J. McCrea, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

This is the second time that the state has appealed the suppression of evidence discovered during a search of defendant's van after he had been stopped at night for a traffic violation. Originally, the trial judge found that defendant had made a wrong turn on a one-way street and entered the following findings:

"Officer Tatum of the Eugene Police Department observed these movements and stopped Defendant's vehicle.

"Defendant's vehicle bore California plates and, upon request of the officer, Defendant displayed a valid California operator's license and valid California vehicle registration.

"* * * * *

"For some reason the officer then proceeded from the driver's side around the front of the van to the passenger side, and a step or two beyond where he was then positioned beside the sliding door used for ingress and egress from the compartment of the van behind the driver's and passenger's seats. The officer flashed his light through the window at the sliding door and observed two beer cans which he thought might contain alcohol and thus be in violation of the open container law."

The judge concluded that the search was illegal under the principles stated in our opinion in *State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978). We reversed. *State v. Jackson,* 62 Or App 7, 660 P2d 183 (1983). The Supreme Court affirmed our reversal and remanded, *State v. Jackson,* 296 Or 430, 677 P2d 21 (1984), holding:

"We have determined that the officer was validly on the passenger side of the van. We cannot conclude one way or the other that his observation of the beer cans made it 'immediately apparent' that a violation of law had occurred. * * *

"* * * * *

"As we interpret the record, the trial judge recognized the intrusiveness issue, but never made relevant findings of fact on that issue because he felt that the act of the officer looking through the window of the right side of the van violated the Court of Appeals decision in *Carter/Dawson.*

"* * * * *

"We believe the record is capable of different interpretations whether an open container violation was 'immediately apparent.' If the trial court makes findings of fact that justify

a conclusion that a violation of the law was 'immediately apparent,' the officer's subsequent search and seizure of evidence must be evaluated in light of the defendant's other listed unresolved contentions." 296 Or at 439.

On remand, the judge issued a nine-page opinion and order in which he reassessed the issue of whether the officer's observation of the beer cans was the result of an unreasonably intrusive search. He concluded that it was. In so doing, he exceeded the scope of the remand. This is not a case in which new evidence was taken on remand. The trial judge considered the transcript of testimony from the first hearing and the exhibits that had been received at that time. Implicit in the original findings is that the officer's vantage point and the use of a flashlight allowed the officer to see something that was in "plain view."[1] That finding is the law of the case and not subject to reconsideration on remand.

The judge recognized that he might be precluded from reassessing the issue of "plain view"[2] and, therefore, considered whether a violation was "immediately apparent" as directed by the Supreme Court. He concluded that the appearance of the beer cans gave the officer a "well warranted" suspicion that they were full or partially full and that on the basis of that suspicion the officer had a right to enter the van. Once inside the van, he was able to see a marijuana roach, as well as a grinder which contained a white powdery or granular substance, in plain view. On the basis of evidence of the officer's experience, the judge found that there was a well-warranted suspicion that the grinder held a controlled substance.

However, although the judge denied the motion to suppress the evidence of the marijuana cigarette and the grinder, he suppressed the controlled substance found in a

---

[1] Defendant did not challenge the use of the flashlight. *State v. Jackson, supra,* 296 Or at 438 n 4.

[2] After concluding that the motion to suppress should be allowed again, the trial judge stated in his findings:

"This Court is mindful and regrets that this case was presented to the appellate courts in skewed posture because of the inadequacy of this court's earlier findings [*sic*] and conclusions. However, an intense review of the evidence leads this court once again to the same result. Having trial transcript available merely clarifies and fortifies its earlier conclusion."

pouch. He reasoned that the search of the pouch was improper, because (1) defendant was under arrest at the time of the search but had not been advised of his *Miranda* rights; and (2) the only basis that the officer had to suspect that the pouch contained a controlled substance was defendant's answer to a question about what was in the pouch, which was that it contained the "same" as the marijuana cigarette.

■     We agree that defendant was under arrest for possession of a controlled substance once the officers had seized the grinder with the powder, but we do not agree that the failure to advise defendant of his rights requires suppression of the evidence. The officers had the right to search the pouch incident to the arrest, irrespective of defendant's statement, and the evidence found in the pouch should not have been suppressed. *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

■     The judge also suppressed the evidence taken from a briefcase which was located a foot or two behind the driver's seat of the van:

> "The briefcase was searched over the protest of the defendant and after his statement that it contained only his personal papers and that he did not want it opened except on a valid search warrant.
>
> "There may have been articulable reasons why the officers opened it and searched its contents anyway, but they were not, in fact, articulated at the hearing. No satisfactory explanation was given why the officers had any reason to believe the briefcase contained anything except what the defendant asserted it contained, much less that it probably contained contraband. Neither was it explained why it could not be seized on an inventory search, and inventoried as a closed briefcase until a search warrant could be obtained. This was a practical and logical stopping place in the search and investigation. A warrant to open the briefcase could have and should have been obtained."

We disagree. The search of the briefcase was part of the search incident to defendant's arrest. The search was reasonable in time, scope and intensity in relation to the offense, *State v. Caraher, supra,* 293 Or at 758, and it was no more extensive than the area within defendant's control. *See State v. Flores,* 68 Or App 617, 639, 685 P2d 999, *rev den* 298 Or 151 (1984).

Reversed and remanded.