Argued and submitted June 8, 1990, reversed and remanded for new trial
March 20, 1991

STATE OF OREGON,
*Respondent,*

*v.*

CARL WAYNE JOHNSON,
*Appellant.*

(CR89-0008; CA A62045)

808 P2d 718

Charles F. Lee, Roseburg, argued the cause for appellant. With him on the brief was Parsons & Lee, Ltd, Roseburg.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Janet A. Klapstein, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

**BUTTLER, P. J.**

Defendant appeals his conviction for carrying a concealed weapon, ORS 166.240, after a trial to the court on stipulated facts following the denial of his motion to suppress. He assigns error to the denial of that motion. We reverse.

Officer Main was on patrol in Myrtle Creek at 5:50 a.m., in December, 1988, when he saw a car being driven by defendant. He recognized neither the car nor the driver. Main described defendant's driving:

> "As he pulled out [of a housing complex], he was kind of wig-wagging, driving slightly erratically on the road. He crossed the double center line at a couple of points and by Ray's Century Market, where it widens up into an island type affair, he crossed into the oncoming lane by a foot or so."

Main signaled defendant to pull over, which he promptly did. Main testified that he stopped defendant for failure to maintain a single lane of travel, ORS 811.370(1), and because he thought that he was dealing with "either a sleepy logger on the way to work or somebody who has been partying all night and is intoxicated on the way home." Within a minute after he asked defendant to step out of his car and present his driver's license, Main was certain that defendant was not under the influence of anything. At about that time, Reserve Officer White and Officer Miller were patrolling the area and saw Main attending the stopped car. White testified that he was acting as a backup, looking for things that could go wrong. They pulled in behind Main's car, sat there and observed until Miller asked White to walk up to the passenger side of defendant's car. White did so and turned on his flashlight to look inside. He saw a pistol on the front passenger seat.

White told Main about the gun and pointed to it. Main stepped to one side to look into the car but could not see the gun. He had defendant step away from the car while White searched it and seized the gun. Main asked defendant if there were more guns. Defendant said that there were none but, when Main asked White and his partner to continue the search, he admitted that there was another one "in the back." White found another gun in a backpack just behind the driver's seat. Defendant told Main that the gun had been stolen from a friend, Peggy McFarland, and that he was retrieving it for her. A records check disclosed that it was

reported to have been stolen from Peggy McGregor. Defendant was then arrested for theft by receiving and unlawful possession of a firearm. Main frisked defendant and found six knives, one of which was a dirk or dagger and was hidden in his boot. Defendant was tried and convicted for carrying that knife concealed on his body; other charges were dismissed.

The trial court held that Main had a reasonable suspicion that defendant was driving under the influence of intoxicants and also had probable cause to believe that he had violated ORS 811.370; therefore, the stop was valid. Defendant contends that the court erred in both of its conclusions and that, even if the stop was valid, he was detained longer than was reasonable and that the scope of the investigation exceeded the reason for the stop.

Although it is questionable whether defendant violated ORS 811.370[1] by crossing the center line when there was no oncoming traffic, *Lindner v. Ahlgren, supra,* n 1, Main made nothing of that reason for the stop. He did not testify that he intended to cite defendant for that possible violation.

---

[1] ORS 811.370(1) provides, in part:

"(1) A person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not:

"(a) operate the vehicle as nearly as practicable entirely within a single lane; and

"(b) refrain from moving from that lane until the driver has first made certain that the movement can be made with safety."

A related statute, ORS 811.295(1), provides:

"A person commits the offense of failure to drive on the right if the person is operating a vehicle on a roadway of sufficient width and the person does not drive on the right half of the roadway."

Those two statutes define the duties of a driver with respect to driving on the right-hand side of a road and have existed since at least 1921 in substantially the same form. Although no criminal cases have interpreted the statutes, numerous civil cases have held that ORS 811.295(1) is not violated, unless there was a car approaching from the opposite direction. See *Weinstein v. Wheeler,* 135 Or 518, 295 P 196, 296 P 1079 (1931), which was followed in *Hartley v. Berg,* 145 Or 44, 25 P2d 932 (1933); *Spence, Adm'x. v. Rasmussen et al.,* 190 Or 662, 226 P2d 819 (1951). *Falls v. Mortensen,* 207 Or 130, 295 P2d 182 (1956), which strayed from that interpretation, was overruled in *Lindner v. Ahlgren,* 257 Or 127, 477 P2d 219 (1970).

The Commentary to the 1975 Revision of the Motor Vehicle Code states:

"The duty to drive on the right has been held to apply only to the circumstance of vehicles approaching each other from opposite directions in a single roadway. *Lindner v. Ahlgren,* 257 Or 127, 477 P2d 219 (1970)."

Even if he had intended to cite him, Main's duty at that point was to write a citation and leave. *State v. Carter/Dawson,* 287 Or 479, 600 P2d 873 (1979).

The trial court did not find how long or how far Main had followed defendant before he pulled him over. However, we will assume that he had a reasonable suspicion that defendant was driving under the influence. *See Fischer v. MVD,* 101 Or App 580, 792 P2d 445 (1990). It is clear from his testimony, and the trial court found, that he was investigating to determine whether defendant was driving under the influence. He testified that he had defendant step out of his car so that he could observe whether defendant was intoxicated. Reasonable suspicion had dissipated within one minute after he told defendant to get out of his car. Main could not say whether White arrived before Main had determined that defendant was not intoxicated. He said that it was "about that time" that White drove up. White testified that he pulled up behind Main's car and that he and Miller sat there and watched until Miller asked him to go over to the passenger side of defendant's car. The trial court found both officers to be credible.

Assuming that the officers' investigation would have been authorized as incidental to the stop, the state has the burden to prove that White's investigation started before Main's suspicion concerning defendant's intoxication dissipated. It failed to sustain that burden. Accordingly, on this record, the justification for detaining defendant or investigating further had ceased, *State v. Farley,* 308 Or 91, 775 P2d 835 (1989); *State v. Harris,* 88 Or App 433, 745 P2d 813 (1987), *rev den* 305 Or 103 (1988), before White started investigating and searching defendant's car. White and Miller had no greater authority than Main. The results of their investigation must be suppressed.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

Because I believe that we are bound by *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), I respectfully dissent.

Officer Main testified:

"I approached [defendant] from the—on the driver's side of the vehicle and had him step out of the car. As I talked to him

and received his driver's license from him, I explained that I stopped him for failure to maintain a single lane of travel. *About that time * * * Officer White approached [defendant's] car from the right-hand side."*

White immediately spotted the gun with a cocked hammer. Main determined that defendant was not intoxicated "within the first minute after he got out of the car." Again, he testified that the other officer arrived "somewhere around the same time."

The trial court made findings and concluded that the stop was valid, that White's looking into defendant's vehicle was not unreasonably intrusive[1] and that the discovery of the gun justified the subsequent searches. No specific finding was made as to the timing of White's arrival and Main's determination that defendant was not intoxicated.

Under *Ball v. Gladden, supra,* when a trial court does not make express findings on a matter, we must presume that conflicts in the evidence were resolved by *implicit* findings that are consistent with the court's ultimate conclusion. We are bound by both explicit *and* implicit findings. Here, the majority improperly weighs the evidence itself and concludes that the state did not prove that White's investigation occurred within the first minute after the stop. The contrary factual determination has already been impliedly made by the trial court. We should therefore affirm, or at most remand for a specific finding on the matter of timing.

Accordingly, I dissent.

---

[1] The majority's reliance on *State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978), *aff'd* 287 Or 479 (1979), is troubling, in view of the Supreme Court's subsequent explanation of that case in *State v. Jackson,* 296 Or 430, 435, 677 P2d 21 (1984). In *Jackson,* an officer stopped a car driving the wrong way on a one-way street. Rather than simply citing the defendant driver and leaving, the officer circled the car and used his flashlight to see into its interior. The court held that the officer's actions were "not illegally intrusive" and reasoned that an officer need not "execute an abrupt about-face and march directly back to the police vehicle" once a driver's license has been returned to him. 296 Or at 438.